FRANK TRUNTLE vs. NORTH STAR WOOLEN-MILL CO.

Argued April 9, 1894.   Reversed April 20, 1894.

No. 8580.

**Verdict not justified by the evidence.**

Evidence *held* not to justify the verdict, for the reason that it appears that plaintiff was guilty of contributory negligence.

**Negligence of the master was not the proximate cause of the injury to servant.**

Even if a master is negligent in not giving his servant instructions and cautions as to the dangers of his employment, yet if the servant receives the same information and cautions from other sources, whether from other persons or from his own observation, and is nevertheless thereafter injured, the negligence of the master is not the proximate cause of the injury.

**Contributory negligence not excused.**

If a servant is advised of a particular danger, and of the proper precautions to avoid it, it is no excuse for a negligent exposure of himself to this danger, or for a negligent omission of such precautions, that he did not realize the full magnitude of the injury which would result therefrom.

Appeal by defendant, the North Star Woolen Mill Company, a corporation, from an order of the District Court of Hennepin County, *Thomas Canty*, J., made July 8, 1893, denying its motion for a new trial.

On Tuesday, July 5, 1892, the plaintiff Frank Truntle commenced work for defendant for eighty cents a day in its mill at Minneapolis, and on the next Saturday his left arm was injured in one of its carding machines.   He was fifteen years old on August 4, 1892. The third floor of the mill was occupied by a large number, about

forty, of these carding machines arranged in rows. He was taken there and told to observe the other operatives and was given charge of five of the machines. This action was brought to recover damages for this personal injury and was first tried in December, 1892, and plaintiff had a verdict for $2,000. This verdict was set aside on defendant's motion and a new trial granted. At the second trial on April 26, 1893, the Judge charged the jury as follows:

"If you find from the evidence that the boy was of sufficient age and discretion to do this work without any special instructions, your verdict must be for the defendant. If the boy was young and inexperienced it was the duty of the defendant to instruct him in such safe methods of doing the work as are ordinarily employed in doing such work and it was its duty to warn him of the dangers to which he was exposed and to see that he not only understood these things but also that he appreciated the dangers to which he was exposed. If you find that the boy was not of proper age and discretion to be put at this work without special instruction and if you find that he was given proper instructions, then your verdict must be for the defendant. If you find that from his own experience, from the length of time he had been at work, he understood these dangers and had learned the proper way of doing the work, then your verdict must be for the defendant. If you find that he had learned from any source the proper way of doing this work and had a proper appreciation of the dangers connected with it, then your verdict must be for the defendant. But if you find that he did not understand and appreciate the dangers connected with this work and that he was not properly instructed and proper care was not taken to see that he did appreciate these things, and that he was injured by reason thereof, then your verdict must be for the plaintiff. If he were a grown person the rule would be that he should use ordinary prudence, and if he did not do so and thereby contributed to his own injury he could not recover. We do not apply that rule to a boy who has not got the capacity of a man, whose age and want of discretion does not give him the capacity of a man, but he must use the amount of care which a boy of his age should use. If he did not and his own carelessness contributed to the injury, then he cannot recover. Simply because he was a boy he was not exempt from the obligation to be careful.

"The only complaint is, that the boy did not understand the danger, that he did not have experience and he was not of the age and discretion to appreciate and understand the danger, and that the master neglected to warn him properly of the danger, and to use proper care to see that he appreciated it.

"An employer is not an insurer of the men he may employ in his business, and cannot be held liable for injuries which they may sustain while performing the duties of their employment, unless such injuries occur through, and result directly from, some negligent act or omission of the employer, and without fault or neglect on the part of the injured person."

Plaintiff had a verdict for $5,750. Defendant moved the court to again grant a new trial but was ·denied and it appeals. The argument here was upon the facts.

*J. W. Gilger* and *A. B. Jackson,* for appellant.

The trial court erred in refusing to dismiss the action at the close of the plaintiff's testimony and again in refusing to direct a verdict for defendant at the close of defendant's testimony. The evidence failed to disclose sufficient facts to constitute negligence on the part of defendant. The plaintiff's evidence disclosed carelessness and negligence on his own part, directly contributing to the injury complained of. *Bohn Mfg. Co.* v. *Erickson,* 55 Fed. Rep. 943; *Buckley* v. *Gutta Percha & R. M. Co.,* 113 N. Y. 540; *Sullivan* v. *India Mfg. Co.,* 113 Mass. 396; *Crowley* v. *Pacific Mills,* 148 Mass. 228; *Ciriack* v. *Merchants' Woolen Co.,* 146 Mass. 182; *Hickey* v. *Taaffe,* 105 N. Y. 26; *Probert* v. *Phipps,* 149 Mass. 258; *Coullard* v. *Tecumseh Mills,* 151 Mass. 85; *Palmer* v. *Harrison,* 57 Mich. 182; *De Graff* v. *New York Cent. & H. R. R. Co.,* 76 N. Y. 125; *Atlas Engine Works* v. *Randall,* 100 Ind. 293; *Ludwig* v. *Pillsbury,* 35 Minn. 256; *Berger* v. *St. Paul, M. & M. Ry. Co.,* 39 Minn. 78; *Larson* v. *St. Paul & D. R. Co.,* 43 Minn. 488.

*Larrabee & Gammons,* for respondent.

There is no dispute between counsel about the correct rule of law governing the duty of a master toward an inexperienced minor servant put to work upon dangerous machinery. The difference between counsel arises in the application of well settled rules to

the facts in this case. About one half the cases appellant cites are from Massachusetts where the courts are greatly biased by sympathy with corporate interests as is said in 1 Shearman & Redfield Negligence (4th Ed.) § 189, Note 2. *Coombs* v. *New Bedford C. Co.*, 102 Mass. 572; *Chicago Anderson Pressed Brick Co.* v. *Reinneiger*, 140 Ill. 334; *Tagg* v. *McGeorge*, 155 Pa. St. 368; *Honlahan* v. *New Am. File Co.*, 17 R. I. 141; *Jones* v. *Florence Mining Co.*, 66 Wis. 277; *Thompson* v. *Johnston Bros. Co.*, 86 Wis. 576; *Rolling Mill Co.* v. *Corrigan*, 46 Ohio St. 283; *Steiler* v. *Hart*, 65 Mich. 644; *Missouri Pac. Ry. Co.* v. *Perogoy*, 36 Kans. 424; *Dowling* v. *Allen*, 102 Mo. 213; *Wynne* v. *Conklin*, 86 Ga. 40; *Whitelaw* v. *Railway Co.*, 16 Lea 391; *Hinckley* v. *Horazdowsky*, 133 Ill. 359; *Railroad Co.* v. *Fort*, 17 Wall. 553.

Inexperienced minors must be instructed in the manner in which the work may be done safely. *Parkhurst* v. *Johnson*, 50 Mich. 70; *Ingerman* v. *Moore*, 90 Cal. 410; *Reynolds* v. *Boston & M. R. Co.*, 64 Vt. 66; *Pullman Palace Car Co.* v. *Harkins*, 55 Fed. Rep. 932; *Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242; *Leigh* v. *Omaha St. Ry. Co.*, 36 Neb. 131.

MITCHELL, J. This action was brought to recover for personal injuries sustained by plaintiff (a boy of fifteen years) while employed as a "helper" in defendant's carding room, by having his arm caught between the rollers of the carding machine.

The negligence charged against the defendant was failing to give plaintiff proper instructions how to perform his work, or proper cautions as to the dangerous character of the machinery, and as to what it was necessary for him to do in order to avoid injury to himself while tending the machine. The charge of the court was an accurate and concise, yet complete, statement of the general principles of law applicable to this class of cases, and the only question here is whether the evidence justified the verdict. A perusal of the record would, we think, impress any one that the evidence of negligence on part of the defendant, proximately contributing to the injury, was, to say the least, very weak, and the evidence tending to prove contributory negligence on part of the plaintiff quite strong; the only question being whether, on these

two points, it made a case for the jury,—often a very delicate and embarrassing question in this class of cases. It is unnecessary to describe in detail the construction or operation of these carding machines, which will be well understood by all who are familiar with them. It will be enough for present purposes to refer to a few facts which will explain wherein we think the evidence is in-sufficient to support the verdict. The duties of a "helper" are to insert the ends of the woolen strands in the proper feed spaces in the feed board in front of the creel, to substitute full spools on the creel for those which have been run off empty, and to take off the full spools of carded wool at the back of the machine, and replace them with empty ones. The slits in the feed board, while wide enough to admit the woolen strands, are too narrow to permit the fingers of the helper to pass through. The distance from this feed board back to the "main cylinder" is eighteen inches, and to the "stripper" fourteen inches, and the distance between the feed board to the ends of the semicircular creel from which the wool was fed was in this case about seven inches. None of the duties of a helper required him to come in contact with any part of the revolving machinery, or to have any part of his person back of the feed board, except that, when passing along the aisles between the machines, he had, of course, to pass near the cog wheels by which the cylinders are turned. The proper and usual mode of putting the strands into the feed board is to throw them from the back of the creel up over a bar on the front, where they could be handily reached from the side, and inserted in the proper slit in the feed board.

There is nothing unusually dangerous about these machines. They had been tended in this room by boys of about plaintiff's age for twenty years, and no previous accident had occurred. The only danger incident to their use arises from coming in contact with the cog wheels while passing along the aisles, or from allow-ing the clothing to come in contact with the rough surface of the card cloth on the revolving cylinders or rollers, which would be liable to result in drawing it, and the member of the body covered by it, in between the rollers, the same as it does the woolen strands. The surface of this card cloth consists of numerous fine-wire spikes or points. These dangers are not hidden, but would be apparent

to any adult, at least, of ordinary intelligence. While plaintiff claimed that the defendant gave him no instructions as to how to do his work, yet he admits that he knew how to do it, because he had watched others, and saw how they did it. He had visited the carding room two or three times before he was employed by defendant, and had been at work tending the machine four or five days before the accident. Defendant's foreman had cautioned him not to get his fingers in the cog wheels by which the cylinders were revolved. He admits that one of the other operatives told him to keep his shirt sleeves rolled up. On the first trial he also testified that the operative told him to do this in order to avoid getting his hand or arm caught between the rollers. On the last trial he denied that he was told the object of rolling up his sleeves, but admitted that he knew that the object was to prevent their being caught by the rollers, and that, if he did not keep them rolled up, they were liable to be caught and pulled in just as the wool was. He said, however, that he did not know that it would also pull in his arm, and did not know but that he could jerk his sleeve out. It is utterly inconceivable that a boy of his age supposed that the precaution was intended merely for the protection of his shirt, and not of his person.

It appears from his own testimony that on the day of the accident he had unbuttoned his shirt sleeves, and rolled them up above his elbows, but that, having no way of fastening them up, the left one had come down, or partly down, and was in this loose and unbuttoned condition at the time of the accident. His testimony is quite confused as to his precise position when he was injured. He says that, the end of one of the woolen strands having fallen on the floor, between the creel and the feed board, he went entirely in between the two, and near the center of the concave side of the creel, for the purpose of picking it up and inserting it into the feed board. This, for reasons obvious to those familiar with the machines, is highly improbable; but, if true, he was where he had no occasion to go, and where he admits he had never seen any other helper go, although he says he himself had done so before. The matter, however, is not important, in view of what he says as to how the accident occurred, because it does not appear that it in any manner approximately contributed to the injury. He says that after he had picked

up the strand from the floor, and had "got up" or "stood up," and was trying to stick the strand into the feed board with his right hand, his attention was attracted by a noise at one of the other machines, and, just after he had looked in that direction, his left sleeve was caught, and drew his arm in between two of the rollers (a "stripper" and "worker," resting on the main cylinder); that he did not know at the time how close his sleeve was to the rollers; that he was not thinking at the time about his left arm, having forgotten about it. The short of all this is that in forgetfulness of the condition of his sleeve, and of the danger from its coming in contact with the rollers, he, for some unexplained reason, extended or threw his arm quite a distance back of the feed or finger board,— a place where it had no right to be, and where there was no occasion for its being. We believe this to be a fair statement of the facts, accepting as true the evidence most favorable to the plaintiff.

There is no doubt of the duty of an employer to give youthful or inexperienced employés all proper and needful cautions as to dangers in the employment which are not apparent, or which the employé, by reason of his youth and inexperience, may not be reasonably expected to appreciate; but no duty rests upon a master to notify even a minor of the ordinary risks and dangers of his occupation which the latter actually knows and appreciates, or which are so open and apparent that one of his age and capacity would, under like circumstances, by the exercise of ordinary care, know and appreciate. It is not enough to render a person liable that he was negligent. His negligence must have been the proximate cause of the injury complained of. Hence, even if defendant was negligent in failing to give proper instructions or cautions to plaintiff, yet, if the latter obtained the same information and cautions from any other source, whether from other persons or from his own observation and experience, the negligence of the defendant was not the proximate cause of plaintiff's injury. Another proposition, we think, must be equally true, viz. that, if a person is informed of a particular danger and as to the proper precautions to prevent it, it is no justification or excuse for a negligent exposure of himself to that danger, or for a negligent omission of such proper precautions, that he may not have realized the full magnitude of the injury to himself which was liable to result from such negligence.

Applying these principles to the facts, the case in hand, from a legal standpoint, stands just as if the defendant, when it employed the plaintiff, had instructed him as to the proper manner of doing his work, and had cautioned him not to get his fingers in the cog wheels, and had cautioned him that, if the sleeves came in contact with the rough surface of the revolving cylinders, it would catch and draw them in between the rollers, just as it did the wool, and that, to avoid any such thing, he should keep his sleeves rolled up. Had defendant done this, it is difficult to see what else reasonable care, which was the measure of defendant's duty, could have required.

But, waiving the question of defendant's negligence, we find that plaintiff was advised of the danger from his sleeves coming in contact with rollers, and directed to keep his sleeves rolled up in order to avoid it; yet he not only disregarded this precaution, but, in a moment of forgetfulness or thoughtfulness, extended his arm with this loose sleeve clear back of the feed board,—a place where there was neither necessity nor occasion for its being. The result was that his sleeve was caught and pulled in between the rollers, pulling in his arm with it. The fact that he had forgotten about the previously known danger, and had forgotten to adopt the suggested precaution to avoid it, or the further fact that he may not have realized the full extent of the injury to which such forgetfulness and neglect would expose him, and that he might have, as he claims, supposed that, if caught, he could jerk out his sleeve before his arm was drawn in, will not, one or all, relieve him of the charge of contributory negligence. On this ground, if not on the other also, we think that the verdict was not justified by the evidence.

Order reversed.

Buck and Canty, JJ., took no part.

(Opinion published 53 N. W. 832.)