BRIDGET GORMAN, Administratrix of the Estate of Thomas Gorman, Deceased, v. THE MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY, Appellant.

**Assumption of Risk of Employment:** *Held established.* Where a brakeman was told to uncouple a train of moving cars from the engine, and given directions as to how the work was to be done, and how best to avoid the danger incident to the transaction, he assumed the risk.

*Same.* That the directions and warning were given by the engineer and not the conductor, does not affect the question of assumption of risk.

**Negligence:** RAILROAD COMPANIES. That the practice of cutting off the engine while the train was in motion was unusual on other roads, did not show negligence on the part of the railroad company.

*Appeal from Kossuth District Court.*—HON. F. H. HELSELL, Judge.

SATURDAY APRIL 12, 1902.

AFTER the hearing on the former appeal (78 Iowa, 509, 43 N. W. 303), the administrator, Robert Gorman, died, and his wife, Bridget Gorman, was appointed administratrix in his stead. Verdict and judgment against defendant, and it appeals.—*Reversed.*

*R. M. Wright* for appellant.

*Geo. E. Clark* for appellee.

LADD, C. J.—On the 23d day of December, 1885, the deceased was a brakeman on defendant's train which arrived at Luverne at about 6 o'clock in the afternoon. The crossing of the Chicago & Northwestern Railroad was about one-half mile to the northeast of the depot, and the water tank about the same distance beyond. To that the road was down grade; but after leaving it, up grade. When the switching had been done, and the train fairly started, moving at the rate of about four miles an hour, the deceased, under direction of the conductor, through another brakeman, in undertaking to "cut off the engine and stop the train for the crossing," pulled the coupling pin, and immediately, or shortly after the engine moved away, fell in front of the detached cars, and was killed. The object in cutting off the engine was to allow it to run on to the tank and take water, and then return to the train, which was to be stopped at the crossing. By this plan, instead of taking the entire train, with the engine, to the water tank, enough momentum could be acquired in the down grade from the crossing to that point to enable the engine to carry the cars up the grade beyond. But one ground of negligence was submitted to the jury, and the averment with respect to that was, in the words of the first instruction, "that the giving of said order by the conductor, under the circumstances as stated, was unnecessary and unusual,

and constituted negligence, in requiring deceased to uncouple the train at said time, when said train was in motion." The circumstances referred to are those stated, together with the inexperience of the deceased, and the claim that the night was dark and cold. It is to be observed that the petition did not allege that the order was unusual, and the only evidence, in addition to that introduced at the former trial, was with respect to the method pursued being unusual and dangerous. As to whether it was usual to uncouple an engine from the train when in motion, pulling out of the station, the testimony was in conflict; but to do so in the yards, while switching, appears to have been common practice. The evidence established conclusively that the method pursued was that customarily followed by the defendant at that place. Though inexperienced, deceased was advised of this custom, and fully informed of what was expected of him by the engineer, within a few minutes before the work was undertaken. That this was by the engineer, in stead of the conductor, can make no difference. *Sullivan v. Manufacturing Co.*, 113 Mass. 396; *Truntle v. Mills Co.*, 57 Minn. 52 (58 N. W. Rep. 832); Shearman & Redfield, Negligence, section 203. It was enough that he knew precisely what was to be done, and was fully instructed exactly how to do it. And as the work was to be performed in connection with that of the engineer, with whom signals were to be exchanged, it was appropriate that the explanation should come from him. It is idle to say he was not advised of the danger. To any intelligent person that was obvious, and was indicated in the instructions of the engineer, which, in part, may be set out: "I told him how to pull the pin. I told him that, on starting, not to try to pull the pin until I told him I was ready. I explained to him that he could not pull it until he got slack, or until I was ready for him to pull it. I says, 'Be prepared, and, when I was ready, pull the pin, and be careful and not

halloo or give the signal to go until you are ready and safely secured on the car;' and I told him to take hold of the handle at the end of the car, and be sure he had a firm foothold of the handle on the end of the car before giving me the signal that he had the pin pulled." Regardless of whether the practice of cutting off the engine when about to leave the station was unusual on other roads, it was followed by defendant at this station; and, as said, the deceased knew precisely what was to be undertaken, and, though inexperienced, had been explicitly informed of the method to be pursued. Warned to be careful, instructed particularly how to do the work, and appreciating the danger, as he must have done if possessed of ordinary intelligence, as is to be presumed, he must be held to have assumed the risk, unless the doctrine of assumption of risk is to be entirely abandoned. The record does not differ materially from that presented on the former appeal.

2    That the practice may have been unusual on other roads can make no difference. Unusual acts are constantly occurring. All progress involves undertaking something not tried before, and he who attempts it has cause of complaint only when not advised of the methods necessary for his protection, and the danger to be avoided. What was said in the opinion of the court on the former appeal, filed October 6, 1889, though the personnel of the court has entirely changed, must be regarded as decisive of the case. See *Gorman v. Railway Co.*, 78 Iowa, 509. This view renders it unnecessary to pass on the errors assigned in the rulings on the admissibility of evidence or the charge of the court.—REVERSED.