FRANK WENDLER v. RED WING GAS & ELECTRIC COMPANY.[1]

May 6, 1904.

Nos. 13,909—(61).

**Master and Servant.**

The doctrine that the master is not in law bound to instruct an employee as to special dangers incident to the employment if such information is fully within his knowledge, reaffirmed.

**Evidence.**

Certain evidence adduced at the trial fails to show prima facie that an injury was inflicted upon appellant by the negligence of respondent in failing to furnish and maintain proper electrical appliances in conducting its electric light plant, or from failing to keep the same in a safe condition.

Action in the district court for Ramsey county to recover $50,000 for personal injuries. The case was tried before Kelly, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*C. D. & Thos. D. O'Brien,* for appellant.

*Barrows & Morrison,* for respondent.

DOUGLAS, J.

From the record it appears that respondent owned and operated an electric light plant at Red Wing, Minnesota, and on January 2, 1902, employed the appellant, who was then not quite twenty one years of age, as night man, and placed him in charge of the switch board of its plant. He is a young man, with considerable experience in matters pertaining to mechanics, and a licensed stationary engineer. Indeed, it appears that at twelve years of age he constructed a steam engine without assistance, which worked perfectly; but his knowledge of electrical appliances and electricity at the time of his employment was slight. A short time prior to his regular employment he had assisted in setting the wire running from the dynamo of the plant to the switch board, and during three or four nights prior to January 2 worked with his predecessor for the purpose of familiarizing himself with the duties of such

[1] Reported in 99 N. W. 625.

employment. His sole duty, aside from that of watchman, and reporting any difficulty arising in the running of the machinery, was at midnight to pull two copper plugs from the face of the switch board. These plugs, when inserted in the cylinders, formed a perfect connection between the dynamo and the electric system established in the city, and their removal broke the continuous current. It seems the pulling of these copper wires or plugs a distance of two or three inches from the face of the switch board disconnected the dynamo from the city's system, but still left the wires connected with the dynamo of the plant, while a complete removal of the plugs from the cylinders operated to disconnect the same from the dynamo. Each plug, including its handle, consisted of a large copper wire inserted at one end in a larger metallic substance, which in turn was encased in a heavy vulcanized rubber handle. The original exhibits were produced upon the argument. The handles were perfectly smooth, not fused or charred in the least. A circular hand shield approximately four inches in diameter, somewhat akin to a sword hilt, was constructed back of and formed a continuous part of each handle.

While working with his predecessor, the appellant at midnight observed him take these plugs by the handles, one at a time, pull them out, and place them in a receptacle adjacent to the switch board, points downward, and was instructed that this was his chief duty. From January 2 until February 7, 1903, he followed these instructions strictly. On the night of February 7, for some unexplained reason, appellant at the usual time, instead of entirely removing them from the cylinder, pulled the plugs in question two and a half or three inches from the switch board, without injury. At seven o'clock the next morning he testifies that he noticed them protruding from the switch board, and as he was about to quit work for the night took hold of the two handles at the same time, and before succeeding in pulling them received through his hands, arms, and body a terrific shock of electricity. The current upon the wires at the time was an alternating one of twenty one hundred volts. The electric current burned his hands, wrists, and elbows upon the inner surface and armpits so seriously as to require amputation of both arms below the elbow. The burns upon the left hand, approximately the size of this copper wire, extended diagonally across three fingers upon the inner surface; and the burn upon the other

hand was of a like description, except that it extended only from the first joint of the little finger diagonally across it to the end. One of the plugs was found upon the floor by assistants, who immediately responded to the outcries of appellant, and the other remained in its socket upon the switch board at approximately the height of a man's head.

A number of witnesses testified that the odor of burning flesh was distinctly noticeable immediately after the accident, and that the exposed portions of the wire forming a part of the plugs were partially covered with what appeared to be freshly burned flesh. This applied to the one still hanging from the switch board as well as to the one which had been pulled completely out and was lying on the floor. Appellant accounts for the burns upon his hands by explaining that in writhing in agony upon the floor he may have incidentally come in contact with the redhot surface of the wire, and that his elbow must have been burned while he was clinging to the handles before he fell, by coming in contact with a metallic substance which protrudes about two inches from the switch board a short distance below the place for inserting the plugs referred to. He insists that he did not touch the wire, and felt safe in grasping the rubber handles only because he was informed that they were insulated, and absolutely nonconductors of electricity.

While it appears, as heretofore stated, that appellant assisted in stringing the wires from the dynamo to the switch board, still he testified that he thought the connection from the dynamo was at the end of the cylinder, instead of further forward at a point immediately behind the switch board. It does, however, fairly appear elsewhere in his evidence, and was expressly admitted by his counsel in argument, that he knew the grasping of the wires in question was dangerous, and calculated to transmit a serious electric shock.

It is claimed—and one expert called on behalf of appellant testified—that electricity might possibly be conveyed over the handles by a sufficient accumulation of dust, provided this dust coating was continuous from the wire over and around the shield and along the surface of the handle. It appears the handles were partially removed at midnight, and no evidence whatever was introduced affirmatively showing the accumulation of dust or other conductors thereon, but that dust might accumulate from a coal bin situated approximately fifty or sixty feet

away, between which and the switch board one room and two partitions intervened. An inspection of the handles, which were produced, does not show an accumulation of dust or other substances thereon. Two witnesses testified that they pulled two like plugs from the same cylinders under the same conditions as to voltage and otherwise without receiving any shock whatever. It also appears that heat is not generated in a wire by the passage of an electric current, unless the current is checked by contact with some substance like flesh. It is argued that, as the rubber handles were not burned, it is apparent that electricity did not pass over or through them, and was, therefore, not checked at the handles by contact with the hands of appellant.

It is also argued that the theory of appellant is conclusively overthrown because of the burned flesh which was found upon the wire remaining in the switch board; also that the burned surface at the elbow and armpit could not be accounted for upon the theory advanced by appellant, for the reason that both burns were upon the inner surface of the arm and armpit, which could not by any possibility be brought in contact with the metallic surface referred to. Respondent explains this in the record as follows: That the tremendous electric current received from the inner surface of the fingers followed the bone of the hand to a point of its breakage at the wrist, where heat was thrown off, because the current was checked in its transmission along the continuous bone; that the current for the same reason was again in part checked at the elbow and at the armpit, which accounts for the burns at the places indicated. It is urged that, as the contact occurred on the inner surface of the hand, the electricity would naturally seek, and in the greatest quantities be transmitted, along the inner surface of the bones of the arm. Appellant alleged in his complaint that at the time of the accident complained of he grasped said plugs by the rubber handles for the purpose of extracting them, and in this position received the shock, by reason of the unsafe and uninsulated condition of said plugs, wires, and switch board, and the negligent and unsafe arrangement and condition of the same.

Upon the trial, after both parties had introduced evidence in their behalf and rested, the learned trial court, upon motion, directed a verdict for the defendant. From an order overruling his motion for a new trial, the plaintiff appealed.

Appellant predicates his right of recovery upon three propositions: First, faulty construction in connecting the wires upon the switch board; second, want of proper instructions to the appellant by respondent; and, third, that the accumulation of dust upon, or the foulness of, the handles of the plugs operated to make them conductors of electricity in sufficient amount to cause the injury. In the court below and here appellant's counsel admitted that, if it is impossible that plaintiff received the injuries complained of in the manner claimed, to wit, from the contact with the rubber handles, the court was clearly right in directing a verdict against him. Our inquiry, therefore, under the pleadings as well as this admission, involves the single question: Did appellant receive a shock and consequent injury from taking hold of such handles, and, if so, did respondent contribute thereto because of the faulty construction of the switch board, failure properly to instruct the appellant in regard to his duties, or by permitting such handles to become so covered with dust as to make them conductors of electricity in sufficient amount to cause the injury?

The learned trial court found the evidence conclusively showed that the injury resulted from appellant's taking hold of the wire, and not from his grasping the rubber handles. In our opinion, the court did not err, and in this view a discussion of the various acts of negligence of the respondent complained of becomes unnecessary, except so far as an analysis thereof may shed light upon the main question of fact, to wit, whether the injury was inflicted in the manner alleged, or, on the contrary, whether it resulted from appellant's grasping such wires.

It appears the switch board and appliances, including the wires leading from the dynamo, were recently constructed by a standard manufacturer of electrical appliances, and are in common use. The wires connected with the dynamo, a fact well known to appellant, and it becomes immaterial, so far as the transmission of electricity over the handles is concerned, whether the connection was made at the back or front of the cylinder. Had the gravamen of the charge in the complaint been, and the evidence established, that appellant seized the wires instead of the handles, without knowledge of danger, and without contributory negligence on his part, with only the meager instructions given him by his master, a much more serious question involving the negligence of the respondent in failing fully to instruct the appellant as to the exact point

where the connection with the dynamo was made, and the effect of contact with the wires, would be presented. These features, however, must be eliminated, as they are not in issue.

It is inferable from the evidence, and appellant frankly admits by his counsel, that he knew it was dangerous to handle the wires, and testified that the injury was inflicted by contact with the handles. It is clear respondent was not in·law required to give him instructions as to any matter fully within his knowledge. Truntle v. North Star Woolen-Mill Co., 57 Minn. 52, 58 N. W. 832. The nature of the burns upon appellant's hands, the failure to show any accumulation of dust or other foul matter upon the handles which could transmit an electric current over them, as well as the fact that it was apparently impossible for such an accumulation to exist in view of the nature of the handles and the shape of the hand shields, and the further fact that the rubber forming a part of such handles and shields was not fused, taking also into consideration the evidence that like handles did not, under identical conditions, transmit electricity, are convincing that the current of electricity causing the grave injury complained of was not transmitted over or through such handles.

This conclusion is strongly re-enforced by the evidence of a number of witnesses to the effect that immediately after the injury the wires attached to each of the handles were partially covered with freshly burned flesh, which accumulation is now apparent thereon. It is perfectly clear that, after appellant had fallen to the floor, the burned flesh could not be placed upon the wire by its coming in contact with his right hand, as this plug, immediately after the injury, was found hanging suspended from its socket, about five feet above the floor. It also appears appellant was in an agitated frame of mind on the night in question (a discussion of the details of which seems unnecessary); that for the first time during his employment he at midnight, contrary to a custom which he had always followed, and against his instructions, partially pulled the plugs from the cylinders, and left them suspended in such a manner as to make it possible for him to grasp the wire instead of the handles.

Upon a careful examination of the record we are of the opinion that it conclusively appears this injury was not caused, as alleged, by the

transmission of electricity through or over the rubber handles, nor by any act or omission on the part of the defendant.

Order affirmed.