JOHN HAGERTY v. ST. PAUL BRICK COMPANY.[1]

July 13, 1906.

Nos. 14,824—(162).

**Master and Servant—Contributory Negligence.**

In an action to recover damages upon the ground that the master did not properly instruct its employee, a minor, how to operate a brick pressing machine, nor properly warn him of the danger connected therewith, *held*, the evidence was sufficient to justify the jury in finding that the master was guilty of the charge, and in holding that the employee was not guilty of contributory negligence.

Action in the district court for Ramsey county to recover $20,000 for personal injuries sustained by plaintiff's minor son. The case was tried before Kelly, J., and a jury, which rendered a verdict in favor of plaintiff for $3,500. From an order denying a motion for judgment notwithstanding the verdict, defendant appealed. Affirmed.

*How, Butler & Mitchell* and *Keith, Evans, Thompson & Fairchild,* for appellant.

*James R. Hickey,* for respondent.

LEWIS, J.

Appellant was engaged in the manufacture of pressed brick, and had three powerful automatically-operated machines, each of which consisted, in part, of a circular top, or table, about thirty six inches in diameter, which revolved from right to left around the center, and in this top, which was three feet above the platform on which the attendants stood, were four moulds, or dies, at equal distances apart, for forming the brick. The moulds were about six inches from the outer edge of the table, were the same length and breadth as the bricks, but some three inches deep.

On the machine in question was a quarter cogwheel, which, when in motion, caused the table to revolve by giving it a quarter turn at distinct intervals, and the table made four complete revolutions per minute, and was at rest four times during each revolution, each rest

[1] Reported in 108 N. W. 278.

period being three times as long as the period of motion, remaining stationary at each interval three seconds, and then in one second moved about twenty inches to the next position. The machine pressed sixteen bricks per minute, one at each stop made, and in its operation a die was first filled with material from the hopper while the table was at rest, then the cogwheel gave the table a quarter turn, and the die thus filled passed to the next position, where pressure was applied to form the material into brick. In the meantime another die had passed to the hopper and was there being filled, and then another quarter turn was given the table, and the material that had been pressed into brick form was carried to the next position, and by the automatic raising of the bottom of the die was forced slightly above the surface of the table to be removed while the table was again at rest, and the next quarter turn would bring this die from which the brick had just been removed around nearly to the hopper; the bottom of the die having ordinarily dropped down in the transit so as to form a mould to be refilled when it again came under the hopper at the next turn of the table. Each die was in view of the operators twice, the first time at the position where the pressed brick was to be taken off, and the second time at the position where the bottom of the die had dropped down and the mould was empty, and at the other positions the dies were covered by the hopper and other parts of the machine.

In operating the machine, two boys stood opposite the die delivering the bricks and picked them off alternately, placing them upon a small car behind them and within two or three feet of the machine, while a third boy, standing a little to their left, as soon as each brick was taken off, brushed the die clean of sand and particles, and also shoveled into the hopper the sand accumulated on the floor from the brushings. The die ordinarily dropped about three inches, leaving the mould empty at the first stop of the table after the brick had been removed, but, if it remained up at that time by reason of grains of sand, it was apt to go down immediately when the table started again. To the right of the boys who picked off brick, and within easy reach, was the belt shifter by which the machine could be easily and quickly stopped.

Respondent's son, John Hagerty, began work for appellant on Monday, April 24, 1905, when he was a little under seventeen years of age. He commenced as a brusher, and worked at that for a couple of days,

and Thursday noon was directed by the foreman to take off brick, at which he worked until Friday noon, when the injury occurred to his fingers. John was returning from the car on which he had placed a brick to the table to get the next one in order, but before he could get there the brick had passed the point where it was customary to remove it, to the next stop, and in this instance the die had not dropped, but remained in position, and John attempted to take the brick off in the manner taught him, when the machine started, the die dropped, and the fingers of his left hand were caught in the mould and drawn between the hopper, or cross-bar, and the surface of the table, so severely crushing them that amputation was necessary. This action was brought to recover damages, based upon the allegation of negligence, in that appellant failed to warn and instruct the boy with respect to dangers and risks which he did not know nor appreciate. The assignments of error challenge the order of the court in denying the motion of appellant, at the close of the testimony, to direct the jury to return a verdict in favor of appellant, and in denying its motion for judgment in its favor notwithstanding the verdict.

As above stated, after working about two days at brushing, respondent was set to work picking off brick. The foreman was a young man about twenty one years old, with limited experience as a foreman, and he stated that when he put John to work he showed him how to brush the dies and keep them clean, and told him to be careful not to get his fingers in the hole, and that if a brick got into it to let it go and not touch it, but simply push in the slide, but not to put his hand in the hole to take any bricks out because, if he got his hand in there, he would lose it; that he also showed him how to take off brick when he assigned him to that duty, and worked for a short time before him, taking off the brick and piling them on the car, showing him just how to do it, as he did all beginners. John testified that when he applied to the foreman for work he was asked how old he was, and, upon answer that he was sixteen, the foreman said, "All right * * * tell Jim [another employee] to have you brush on one of the machines"; that the boy Jim Reikel showed him how to brush off the dies and how to shovel the sand from underneath into the hopper, and he went to work; that when he was told to take off brick the foreman showed him how to do it, so as not to break the edges or corners, but did not ex-

plain anything else, and that no one gave him any instructions regarding the machinery or dangers connected therewith; that, in operating the machine, broken brick and brick that went by were knocked off, sometimes by the brusher and sometimes by the boys who took away the brick, and that he himself had followed this practice, and had frequently knocked off broken brick. He also testified that he had a few times taken off whole brick from the die at the place where he was injured, when the die had not dropped and the brick remained in position, slightly above the surface of the table and when he was too late to pick it off at the usual place, and that he always took it off in the manner shown him.

John was a boy of ordinary intelligence, and so far as the record shows had never been employed in any kind of a factory, nor had ever had anything to do with machinery. Previous to his employment with appellant he had worked three weeks in a brewery pasting labels on bottles, six months at the Northern Pacific general offices as office boy, then for a short time he worked as messenger boy for the North American Telegraph Company, and for about three months worked at Mannheimer's, assisting one of the drivers in delivering packages.

The foreman's account of the manner of instructing this boy and others is rather general, and not very satisfactory. It amounts to this: When putting respondent to work at brushing, he was told to keep the die clean, not to let bricks go by, and when necessary to push in the slide. The instructions were general and had reference simply to the duties of respondent, what he was expected to do in the performance of his work, and had no special reference to the difficulties or dangers attending the same. The foreman says he told the boys to try and not let the brick go by, but not to take them from the table when they had gone by, and claims that he warned them of the danger of the machinery. Yet he was unable to state in any particular way how he explained the danger, nor does he claim to have indicated to John the danger of having his hand caught and drawn under the hopper by the quick movement of the machine in case he might be handling brick at or near that point when the table started. Although the foreman claims to have instructed John as to the use of the slide, this was denied, and it was the practice, presumably with the knowledge of appellant, for the brusher and the other boys to indiscriminately knock off spoiled brick,

and not to rely on the slide to prevent the same from causing the machine to clog.

It no doubt required considerable experience to quickly lift off a fresh pressed brick in such manner as not to break the edges or corners, and while one brick would be of no great value it was perfectly natural for the operator, after the brick had reached the next stop, the die not having dropped, to try and take it off rather than knock it off or push in the slide, conceding he was instructed to do so on such occasions. Here was a situation in itself very dangerous. The circular table moved so close to the hopper, and the point of contact was only four inches from the contiguous die when the table was at rest. Unless the operator had learned by observation and experience that it was dangerous on account of the quick movement of the table in starting, it would be rather natural to reach over and try to save the brick by lifting it off at that point, and, in the absence of express directions as to the danger of doing so, it cannot be said as a matter of law that he was guilty of contributory negligence in so doing.

The case differs somewhat from the case of Truntle v. North Star Woolen-Mill Co., 57 Minn. 52, 58 N. W. 832, and the general principles discussed there have no application here. While true that in the few days' experience John must have observed how the machine started and stopped, and must have seen that the table came in close contact with the bar and hopper, and must have known that if his hand was permitted to remain in the die while it passed under the cross-bar that it would be seriously injured, yet, under all the circumstances, considering the dangerous and rapid movement of the machine, the age of the boy, the nature of the instructions given him, his means of observation and his limited experience, whether he appreciated the risks and dangers connected with such attempt was a question of fact, to be determined by the jury.

Order affirmed.