JAMES MOODY v. H. ALDEN SMITH and Another.[1]

May 29, 1896.

Nos. 9826—(48).

**Master and Servant—Action for Injuries—Contributory Negligence.**
   Evidence considered, and *held* sufficient to justify the order of the trial
court in denying plaintiff's motion for a new trial.

Action in the district court for Hennepin county.   At the trial,
upon the conclusion of plaintiff's testimony, the court, Belden, J.,
granted defendants' motion to dismiss the case on the ground that
plaintiff had not made out a cause of action.   Plaintiff had been em-
ployed in defendants' factory, had quit work, and afterwards was
employed a second time.   The other facts are stated in the opinion.
From an order denying a motion for a new trial, plaintiff appealed.
Affirmed.

   *F. F. Davis*, for appellant.
   *Keith, Evans, Thompson & Fairchild*, for respondents.

BUCK, J.   On January 10, 1894, the defendants were co-partners
and owners and operators of a sash and blind manufacturing estab-
lishment in the city of Minneapolis.   The plaintiff, at that time, was
28 years old, a general laborer by occupation, and in sound physical
health, and was then employed by the defendants to operate in their
establishment a machine commonly known as a "jointer."   Plaintiff,
at the time of this employment, had no previous experience in oper-
ating a machine of this character, and received no notice or instruc-
tions from the defendants as to the risks incident to its operation,
or of the dangerous character of the machine at any time prior to or
during the time of his employment.

   This machine consisted of a heavy table-frame, about two feet wide,
at the back of which, and rising above the top, was situated a head
block, holding knives which, revolving, operated to shave off the
edge of sash passing in front of them.   Resting upon the top of this
table-frame was a movable table-top, or movable frame, which was

1 Reported in 67 N. W. 633.

about eight inches wider than the table-frame, and made to accommodate various sizes of sash. This movable top ran in grooves, and was so adjusted as to bring the check rail of the sash, when put in position, and moved upon it, to the face of the knives, for the purpose of shaving off a portion of the check rail. The sash was laid upon this table, and fastened in place by clamps, or stops. These were set screws, and their purpose was to hold the sash at the proper distance for shaving off a strip when passing the knives. The movable table, when not in use, rested upon the end of the table beyond the knives, and, in use, was pushed down to and past them by the operator. After passing the knives, the edge of the check rail brushed against a revolving disk, covered with sandpaper, also at the back of the table, in such a manner as to smooth off the surface which had been shaved by the knives. When past this disk, the sash was lifted from the frame by the operator, and bored and plowed for the ropes which hold window weights, by other attachments, at the lower end of the table, and at the front side. All these attachments were run by steam power.

On the day of his second employment, he was set to work at this machine, and shown how to operate it. He made no complaint as to the work, and asked for no further instructions than he received, and, in fact, needed none, as his testimony throughout shows. The knives, together with the block to which they were attached, were uncovered. The head block was about four inches square, and it and the knives attached to it were in plain view, projecting above the table from one-half to three-quarters of an inch higher than the thickness of the sash. The appellant knew of the location of the knives, and had frequently, while at his work, sharpened them by whetting. Upon the third day of his last employment, about 10 or 11 o'clock in the forenoon, and just after he had whetted the knives, he started in a sash in the usual way, and, after it had nearly passed the knives, and had reached the sandpaper disk, he says it flew up out of the grooves in which it rested, and that, in the effort to replace it, he threw his hand upon it, and, the sash coming in some way in contact with the knives, his hand was thrown against them, and he received the injury complained of.

In operating the machine the appellant had the width of a movable cover, projecting about seven inches, on top of the table frame,

between his body and the knives, and it was not necessary for him to have any portion of his body very near the knives, while his hand, which grasped the end of the frame, was brought about six inches from the knives when pushing the movable table. It appears that the plaintiff was not injured by the machinery, while operating in its usual and ordinary manner, but while he was attempting to replace a sash which had been thrown out of place. His own testimony upon this point is as follows: "I had just been whetting up the knives, and started the machine, and took a sash and laid it on the carriage, and started by the knives, and I just got it a little over the sandpaper wheel, and it raised up, and I went to put it down, and it took my hand into the knives, and cut two fingers off and part of my hand."

Now, referring to the allegation of negligence in the complaint, we find that defendants are therein charged in this respect only as to their omission to properly guard, fence, protect, and cover the jointer. This is the only defect complained of. If the sash was thrown out by the sandpaper disk raising the sash from the table, as claimed by the appellant, then there is no allegation in the complaint charging such negligence against defendant. We fail to find any satisfactory evidence tending to show that, if the jointer had been covered, it would have protected or saved the plaintiff from the injury he received. Nor is it apparent just what caused the sash to raise up, but it did appear from the plaintiff's own testimony that he could easily have stopped the knives from running, that he had done this just before the accident, and that all that was necessary to do was to pull a lever with his hand and throw off the belt. If he had done this, it would have been a safe way to again adjust the sash, and replace it where it properly belonged. But, with a knowledge that the knives were revolving with great rapidity, he undertook to replace the sash, with full knowledge, as it seems to us, of the great risk which he was incurring.

Upon the defendants' motion to dismiss the action, upon the ground that plaintiff had not made out a cause of action, the trial court used the following language, which we approve, viz.: "The question involved in this motion is one of contributory negligence. Its sole relation depends upon the degree of care the plaintiff was bound to exercise in replacing the sash. The fact or cause of the displace-

ment of the sash is not a factor of decisive or great importance. It was not a proximate cause of the injury, but only a condition immediately preceding such cause. The plaintiff was bound to exercise, in the matter of replacing the sash, a degree of care commensurate with the risk that was, or by the exercise of ordinary observation and intelligence ought to have been, apparent to him. He knew that he could wholly remove the sash, and return the frame, and replace it there. He also knew that he could stop the machinery, and replace it without returning the frame. It seems absolutely certain that he would have fully and completely realized the great peril of attempting to replace it, as he did, against the rapidly revolving machinery, if he had for an instant stopped to think."

The law of master and servant is so well settled by the adjudications of this court, in cases of this character, that we do not feel under obligation to again discuss it or cite authorities. We are of the opinion that the plaintiff was guilty of such contributory negligence in the premises as bars his right of recovery, and therefore the order of the trial court denying plaintiff's motion for a new trial is affirmed.