NETTIE J. BLOM v. YELLOWSTONE PARK ASSOCIATION.[1]

May 16, 1902.

Nos. 12,964—(129).

**Assumption of Risk—Charge to Jury.**

> Action to recover damages sustained by the plaintiff while operating, as the employee of the defendant, an unguarded mangle in its laundry. The trial court directed a verdict for the defendant, on the ground that, upon the undisputed evidence, the plaintiff fully understood and assumed the risks incident to the operation of such machine. *Held,* that the instruction was correct.

Action in the district court for Ramsey county to recover $10,000 for personal injuries. The case was tried before O. B. Lewis, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*H. Steenerson* and *Charles Loring,* for appellant.

The burden of proof is upon defendant to show that plaintiff assumed the risk. Scharenbroich v. St. Cloud Fibre-Ware Co., 59 Minn. 116, 123. To constitute a valid waiver the plaintiff's conduct in continuing the service must have been with a full knowledge of the risk. 28 Am. & Eng. Enc. (1st Ed.) 527; Sims v. Lindsay, 122 N. C. 678; Russell v. Minneapolis & St. L. Ry. Co., 32 Minn. 230; Kaillen v. N. W. Bedding Co., 46 Minn. 187, 189. The true rule governing the question of assumption of risk is that laid down in Southern Pacific Co. v. Yeargin, 109 Fed. 436, 442.

*C. W. Bunn* and *Emerson Hadley,* for respondent.

START, C. J.

The plaintiff's hand was crushed and burned while she was operating, as the employee of the defendant, an ironing mangle in the laundry department of one of its hotels in Yellowstone Park. She brought this action to recover damages for such injuries, and on the trial thereof the district court, at the close of

[1] Reported in 90 N. W. 397.

the evidence, directed a verdict for the defendant. The plaintiff appealed from an order denying her motion for a new trial.

The evidence was practically undisputed, and establishes these facts: The machine causing the injury was operated by steam, and was an old-style mangle, which had been used by the defendant for nine seasons in its laundry. It consisted of two small rollers covered with cloth and one large roller heated by steam. In front of the rollers there was a feeding box to hold the clothes, on the top of which was a shelf some eight inches wide, upon which the operator placed the end of the article to be ironed, and, after smoothing it out to its full width with her hands, started it into the rollers, which would catch and draw it through between them. The box concealed the heated roller. The mangle in question had no guard in front of the rollers to prevent the hands of the operator from being drawn into them, if by inadvertence or other cause she did not remove them in time. A guard whereby such danger might be obviated is a very simple affair. It consists of a small iron or steel rod in front of the point of contact of the rollers, and raised above the lower one sufficiently to allow the articles to be ironed to be fed into the rollers, but not high enough to allow the fingers of the operator to be drawn into them. All modern mangles are provided with such a guard, and it was perfectly practicable for the defendant to have placed such a guard upon its machine. With such a guard it was reasonably safe, but without it the machine was dangerous unless the operator exercised great care. The plaintiff was the only person ever injured while operating this particular machine. She was twenty-eight years old at the time of the accident, and her testimony indicates that she was an intelligent and experienced woman. Before commencing work for the defendant she had worked five weeks with a similar mangle, except it was provided with a guard, which she knew was for the protection of her hands when feeding the machine. She also knew that the machine which injured her did not have any guard, and that she must keep her hand away from the rollers or it would be drawn between them. She worked on this machine from the thirteenth to the thirtieth of June, 1900.

On the last day named she was in the act of putting a table cloth through the rollers, when her hand, as she expressed it, "seemed to stick to the cloth," and was drawn with it between the rollers, and crushed and burned. With reference to the space between the rollers she testified as follows:

"Q. You spoke on your cross-examination about the different thicknesses of the table-cloths and bedspreads. Now, how thick cloths did go through there ordinarily? A. Oh, I guess a bedspread was the thickest of anything that went through. Q. What happened if they were as thick—thicker than bedspreads; as thick as your hand, for instance? A. I don't think they could have gone through."

And pursuant to the agreement of the parties she is deemed to have further testified that at the time of the accident or before she did not know that there was any danger of her hand being pulled in between the rollers. However, the specific facts which we have here stated were substantially admitted by her in giving her testimony on the trial.

It is obvious from this statement that the evidence was ample to take this case to the jury upon the question of the defendant's negligence, for it tends to show a censurable indifference on its part as to the safety of its employees who were required to use the machine in question. The trial court directed a verdict for the defendant upon the sole ground that the plaintiff assumed the risks incident to the operation of the mangle. The rule as to the assumption by a servant of the risks incident to the use of defective machinery furnished by the master is well settled. It is this: If the instrumentalities furnished by the master for the performance of the servant's duties are defective, and the servant not only knows this, but also knows and understands, or ought in the exercise of ordinary prudence to understand, the risks to which such defects expose him, he assumes the risks incident to the use of such defective instrumentalities. Fleming v. St. Paul & D. R. Co., 27 Minn. 111, 6 N. W. 448; Walsh v. St. Paul & D. R. Co., 27 Minn. 367, 8 N. W. 145; Wuotilla v. Duluth Lumber Co., 37 Minn. 153, 33 N. W. 551; Berger v. St. Paul, M. & M. Ry. Co., 39 Minn. 78, 38 N. W. 814; Kaillen v. N. W. Bedding Co., 46 Minn. 187, 48

N. W. 779; Stiller v. Bohn Mnfg. Co., 80 Minn. 1, 82 N. W. 981; Christianson v. N. W. Compo-Board Co., 83 Minn. 25, 85 N. W. 826.

But to justify the court, in a given case, in holding as a matter of law that the servant assumed the risks incident to the use of defective and dangerous machinery, it must clearly appear from the undisputed evidence that he knew of the defects therein, and that he fully understood and appreciated, or ought to have understood, the dangers and hazards incident to its use. This is such a case. It is true it was admitted that the plaintiff would have testified that she did not know that there was any danger of her hand being drawn into the unguarded machine. But this must be accepted as a part of her testimony on the trial, and must be considered and construed in connection with that actually given by her. So construed, it is, in effect, that, other than as already stated in her testimony, she did not know there was any such danger. It conclusively appears from her testimony that she knew that the purpose of a guard on a mangle was to protect the hands of the operator from coming in contact with the rollers, that the mangle in question was not equipped with such a guard, and that she must keep her hand from coming in contact with the rollers or it would be drawn between them and injured. In short, no other reasonable inference can be drawn from the undisputed evidence except that the plaintiff knew and appreciated the defects in the mangle and the dangers and risks incident to its operation in its defective condition. Therefore it must be and is held as a matter of law that she assumed such risks.

The plaintiff assigns several errors as to the rulings of the court in receiving and refusing to receive certain evidence. The first one is that the court erred in receiving the defendant's Exhibit 1, which was a photograph of the mangle with the box off so as to disclose the heated roller. It is urged that this was error because the box was in place, whereby the heated roller was concealed when the accident happened. It was properly received in evidence for the purpose of showing the construction of the machine. Besides, a photograph was given in evidence showing the machine with the box on as it was when the accident happened. The second one is that the court erred in sustaining an objection to the question

whether, in the operation of a machine without a guard, there was any tendency to draw the fingers of the operator toward the rollers. That such was the case was apparent from the description of the machine and the method of operating it, which was fully testified to by the witnesses; hence the plaintiff was not prejudiced by the ruling, whether strictly correct or not. The last one of any merit is that the court erred in sustaining an objection to a question to the plaintiff as to what knowledge she had as to the danger of her hand being caught in the rollers. This error was cured by the subsequent admissions of the parties as to her testimony on this point.

Order affirmed.