MINNIE JENSEN v. WILLIAM REGAN and Others.[1]

June 10, 1904.

Nos. 13,851—(104).

**Contributory Negligence.**

> Respondent was injured while attempting to remove a tablecloth from the rolls at the delivery side of a laundry mangle. *Held*, it conclusively appears from the evidence that she was guilty of contributory negligence, and assumed the risk of her act.

Action in the district court for Hennepin county to recover $10,000 for personal injuries. The case was tried before Simpson, J., and a jury, which rendered a verdict in favor of plaintiff for $1,500. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed.

*Koon, Whelan & Bennett,* for appellants.

*Elijah Barton* and *Humphrey Barton,* for respondent.

LEWIS, J.

Plaintiff was injured while operating what is known as the "Troy Mangle," manufactured by the Troy Laundry Machine Company—a machine in common use in the smaller laundries throughout the country. As generally used, it was not rigged with strings—a sort of endless belt adjusted to some mangles for the purpose of preventing large pieces of clothing from wrapping around the rollers. The mangle consisted of a steam-heated roller, sixty four inches long, forty eight inches in circumference, and eighteen inches in diameter, which was fed with steam through a half inch pipe. On the top of this roller were two padded rollers, each sixty six inches long and six inches in diameter; and on the back or receiving side of the mangle, situated lower down than the others, was a third roller of the same size. The steam roller was movable, and could be raised or lowered by means of a lever so as to press, or not, the articles being ironed against the padded rolls, which revolved slowly, making thirteen and a half revolutions a minute, while the steam roller made six and a half revolutions a minute. The

[1] Reported in 99 N. W. 1126.

goods were fed into the machine on the front side, passed over the steam-heated roller and under the padded rollers, and were delivered upon a table on the opposite side of the machine. The distance from the bottom of the third roller to the receiving table was four and a half inches; the receiving table was two and a half feet high; and the distance between the third and second roller was three and a half inches wide, through which opening the steam roller was plainly visible. The usual guard was on the front or feeding side of the mangle, but none was on the delivery side to protect the space between the second and third rollers, and no provision was made for it by the manufacturer. The steam roller was operated by electricity and could be started and stopped by means of a brake consisting of an iron rod running underneath the mangle, on each end of which was a six-inch piece of iron, flattened at the end, on which the receiver could put her foot and instantly stop the machine.

Respondent went to work for appellants August 14, 1902, to operate the above-described mangle, and continued until the following September 3, when she was injured. She was nineteen years old, and had worked eleven months in the Model Steam Laundry in Omaha at both feeding and taking away from a mangle, although of a different type, equipped with an endless chain, and larger than the one under consideration. By respondent's experience she had become acquainted with the means of controlling the machine, knew the purpose of the steam-heated roller and the padded rollers, and appreciated the danger of permitting the hands to come in contact with the rollers when in operation.

Appellants' laundry was a small one, used for laundering the table linen in their restaurant. Respondent was engaged partly in feeding and partly in taking away linen, and, according to her own testimony, while removing ironed goods from the mangle, a tablecloth about six feet square, once folded, commenced to wind about the third roll. That it had gone once around it, and began the second time, when it became twisted so that the extreme left of the cloth, next to the third roll, stuck out; and respondent took hold of the projecting corner at the bottom of the third roller, attempting to pull the cloth off the roller towards her left, while the mangle was in motion and the pressure on, and the tablecloth was passing between the steam roll and the

padded rolls. While in this manner attempting to pull out the table-cloth, her little finger caught in a hole in the edge of it, drawing her hand over the third roller into the space between the third and second rollers, and between the third roller and the steam-heated roller, thereby causing serious injury.

The complaint of respondent charges that the mangle was defective and unsafe, to appellants' knowledge; that respondent did not know or understand and appreciate the dangerous and unsafe condition of the mangle, and that appellants failed and neglected to explain or make known such defects to her, and to explain and make known to her the risks she was subject to in working at the machine; that, on the day in question, appellants were negligent in causing a piece of linen to be put through the mangle which was badly torn and full of holes and unsafe and dangerous, and that respondent did not know and could not have ascertained its condition; that, because of the defects in the machine, and the ragged condition of the linen, it was caught and wrapped around the rollers; and that while in the discharge of her duties, trying to get the linen away from the mangle, in the due exercise of care and caution, her little finger was caught, and her hand carried into the machine and injured. A verdict having been returned for respondent, appeal comes to this court from an order denying appellants' blended motions for a new trial and judgment notwithstanding the verdict.

The assignments of error present the following propositions:

1. Whether the mangle was defective in not having a guard on the delivery side, and, if so, were appellants negligent in not instructing respondent in reference to such defects, and the risk she was incurring in operating it?

2. Whether or not respondent assumed the risk of operating the mangle, conceding there were any defects therein?

3. Was respondent guilty of contributory negligence in attempting to remove the linen in the manner in which she did, and did she assume the risk of operating the mangle in the manner stated?

4. Was respondent bound by the release which she executed subsequent to the accident?

We will assume, without deciding, that the machine was defective, not being equipped with a guard over the space between the second and

third rollers; and we will assume, not deciding, that respondent did not relinquish her rights by the execution of the release.

This case is governed by Blom v. Yellowstone Park Assn., 86 Minn. 237, 90 N. W. 397, wherein was applied the principle announced in many prior decisions, that if the instrumentalities furnished by the master for the performance of the servant's duties are defective, and the servant not only knows this, but also knows and understands, or ought, in the exercise of ordinary prudence, to understand, the risks to which such defects expose him, he assumes the risks incident to the use of such defective instrumentalities.

We are clearly of the opinion that respondent had been instructed in the use of the mangle, was thoroughly familiar with it, knew the movements of the rollers and how to start and stop the machine, thoroughly comprehended the danger of permitting her hand to come in contact with the steam-heated roller, had knowledge of the fact that this machine was not equipped with strings to prevent material from wrapping about the rollers, and must have appreciated the danger of attempting to remove the tablecloth without stopping the machine. Respondent relies upon the fact that she had seen some one else in this manner remove a large piece when so wrapped about the roller, and claimed that she had not been informed of the danger connected therewith. It is, however, inconceivable, considering her experience of nearly a year in operating mangles, and after having been instructed in the manipulation of this one, and told of the danger in allowing her hands to come in contact with the heated roller, that she should not discern the danger of her act. Her business was to receive the goods as they were delivered through the rollers upon the table, and the brake was located within instant reach of her foot in case it was necessary to stop the mangle. Respondent did not deny that she could have readily put her foot upon the lever, and, under the circumstances, to voluntarily assume the accomplishment of so dangerous an act without stopping the machine evinces such recklessness and carelessness as will make her responsible. What more could appellants have done than to point out what her duties were, explain the method of operating and controlling the mangle, and warn her of the danger of getting her hands between the rollers?

The case is distinguished from Wuotilla v. Duluth Lumber Co., 37 Minn. 153, 33 N. W. 551, and Christianson v. Northwestern Compo-Board Co., 83 Minn. 25, 85 N. W. 826. In the former it was the business of the injured person to start the slabs down the roller after they left the saws, and, if a slab became crooked, or a piece of bark got into the rollers, he had to leave his stand and go down and straighten it or take it out. In doing this he had to pass an unguarded gearing, which caught his clothing. In the latter case the injured person, while in the act of throwing away some waste, lost his balance and fell forward, striking his arm against an unprotected saw. It will be noted that in those cases the injured person was engaged in the performance of a duty which was not directly concerned with the unguarded piece of machinery which caused the injury. It would be very easy, under such circumstances, for the employee, while his attention was engaged in his immediate work, to become unmindful of the danger in connection with other portions of unguarded machinery.

But in the case before us respondent stood facing the table upon which the ironed goods were delivered, and there is no possible claim that she inadvertently placed her hands in the dangerous position. On the contrary, it was a deliberate and voluntary act on her part, in the very face of an open danger which must have been understood. Under such circumstances, it is no excuse that the tablecloth was ragged and full of holes, one of which caught her finger, or that she had seen some one else attempt to do the same thing.

What we have already said applies to the question of contributory negligence. In attempting to remove the cloth without stopping the machinery, respondent contributed to her own danger, and cannot recover upon that ground. The case is clearly covered by Moody v. Smith, 64 Minn. 524, 67 N. W. 633; Wulff v. W. A. Wood H. Co., 67 Minn. 423, 70 N. W. 156. See contra Hendricks v. Lesure Lumber Co., supra, page 318.

Order reversed.