# GEORGE JOHNSON v. UNITED FLOUR MILLS COMPANY.[1]

January 29, 1915.

Nos. 18,971—(196).

**Injury to servant — assumption of risk.**
    Evidence in an action to recover damages for injuries alleged to have

[1] Reported in 150 N. W. 902.

---

Note.—The question whether the servant may assume the risk of dangers created by the master's negligence is treated in notes in 4 L.R.A.(N.S.) 848 and 28 L.R.A.(N.S.) 1215. And upon the servant's assumption of risk of defective tool, machine, or appliance, where the defect is obvious, but its importance not appreciated, see note in 13 L.R.A.(N.S.) 691.

been caused by defendant's failure to furnish plaintiff, its servant, with a safe place to work and proper appliances, and its unsafe methods of work, whereby a bag of oats fell on plaintiff while he was unloading an elevator, *held* conclusively to establish the defense of assumption of risk.

Action in the district court for Brown county to recover $12,525 for injuries received while in the employ of defendant. The case was tried before Olsen, J., who denied defendant's motion to dismiss the action, and a jury which returned a verdict for $725.50. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Reversed with directions to enter judgment for defendant.

*Albert Hauser,* for appellant.
*Davis & Berg,* for respondent.

PHILIP E. BROWN, J.
Appeal by defendant from an order denying its alternative motion, after verdict for plaintiff, in an action to recover damages for personal injuries alleged to have been caused by defendant's negligence.

About 10 years prior to the accident plaintiff commenced to work for defendant in its mill at Sleepy Eye. Some three years thereafter it installed an elevator from the first to the third floor, consisting of a continuous rubber belt running over pulleys. Steps made of two boards 23 inches long and 14 inches wide, set at right angles to each other, were hinged to the belt, so that in descending one of the boards of the triangle constituted the step, and in ascending the other. These steps were without flanges, guards, or devices of any kind to prevent articles placed thereon from falling either through vibration or waving of the belt or otherwise. This type of elevator has been in general use in up-to-date mills for the last 25 years, for the purpose of lifting and lowering passengers, bags and materials. About a year after the one in question was installed, defendant commenced to use it for the purpose of raising and lowering products in bags, and plaintiff, whose duties were, at all times while in defendant's employ, those of a "roustabout," or man of all work, then began both to remove and to place them on the elevator. He continued so to do for about two years, when he left defendant's employ. Some two years

later he re-entered its service and worked two weeks, doing the same kind of work. He then again quit, returning to work for defendant on July 18, 1913. Some two hours thereafter, while engaged in taking sacks of oats from the elevator, he was struck by one falling from above, and sustained the injuries for which he seeks a recovery. The elevator remained in the same condition during all the times mentioned, and was operated and the work done substantially in the same manner.

The negligence charged and relied on was failure to furnish plaintiff a safe place in which to work, with safe appliances, and to use safe methods in conducting the business; his specific claim being that the bag of oats fell from one of the elevator steps above him because of its unguarded condition. Assuming then that the accident so occurred and defendant was thereby chargeable with negligence, the only question necessary to be considered is whether it conclusively appears that plaintiff assumed the risk.

In addition to what has been stated, plaintiff testified, and there is nothing in the record to the contrary, that he knew bags fell off the steps every little while, and that if they were not properly placed thereon they were liable to fall off; also that the jar and wave of the belt might throw sacks off, even if properly placed; that it was his custom to look up occasionally to see whether any of them were falling; and that he had done this just before the accident occurred. No question of statutory duty to guard is involved in this case, but the general doctrine of assumption of risk is well stated in Blom v. Yellowstone Park Assn. 86 Minn. 237, 90 N. W. 397:

"If the instrumentalities furnished by the master for the performance of the servant's duties are defective," said Chief Justice Start, at page 239, "and the servant not only knows this, but also knows and understands, or ought in the exercise of ordinary prudence to understand, the risks to which such defects expose him, he assumes the risks incident to the use of such defective instrumentalities."

This rule applies to risks incident to both places in which to work and to unsafe business methods. 2 Dunnell, Minn. Dig. §§ 5972, 5978. And while the doctrine of assumption of risk is not favored, and the burden rested on defendant to establish the defense, we are

constrained to hold that, under the simple situation presented, every element clearly appeared and the defense was conclusively established. Dobreff v. St. Paul Gaslight Co. 127 Minn. 286, 149 N. W. 465; Falkenberg v. Bazille & Partridge, 124 Minn. 19, 144 N. W. 431, 2 Dunnell, Minn. Dig. § 5979, and sections above cited.

Order reversed with directions to enter judgment for defendant.