# HOGAN GRASETH v. NORTHWESTERN KNITTING COMPANY.[1]

January 22, 1915.

Nos. 18,978—(180).

**Expert witness — discretion of court.**

1. Trial court *held* not to have abused its discretion in the matter of qualification of witnesses to give expert testimony upon the practicability of fitting a mangle with hand guards.

**Guarding dangerous machinery — failure to warn servant.**

2. Evidence in an action to recover damages for personal injuries received while operating a mangle in defendant's factory, *held* sufficient to take the case to the jury on the issues of defendant's negligence in not providing the machine with a hand guard and in failing to instruct and warn.

**Questions for jury.**

3. The issues of assumption of risk and contributory negligence were also for the jury.

**Denial of new trial — argument of counsel.**

4. Trial court's refusal to grant defendant a new trial on account of remarks made by plaintiff's counsel during argument of his motion for an adjournment in order to enable him to procure expert testimony upon the practicability of guarding the machine, *held* not reversible error; the jury having been promptly directed not to consider the remarks, ample opportunity having thereafter been afforded for inspection of the machine, and the experts making the same having been allowed to testify in the case.

**Charge to jury.**

5. There was no reversible error either in the instructions given or in refusal of those demanded.

**Verdict not excessive.**

6. Verdict for $12,000, for injuries to a 17 year old girl's right hand and forearm which not only disfigured but rendered them practically useless, sustained.

[1] Reported in 150 N. W. 804.

Action in the district court for Hennepin county by the father of Edith Graseth, a minor, to recover $25,000 for injuries sustained by her while operating a mangle in defendant's factory. The case was tried before Hale, J., who at the close of the evidence denied defendant's motion to dismiss the action, and a jury which returned a verdict for $12,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*P. J. McLaughlin,* for appellant.
*Larrabee & Davies,* for respondent.

PHILIP E. BROWN, J.

Action to recover damages for personal injuries. After verdict for plaintiff and denial of defendant's alternative motion, it appealed.

Plaintiff's minor daughter Edith, aged 17 years, was injured in defendant's factory while operating a mangle used for dry pressing new underwear. It contained a polished metal steam-heated roller five feet long and 25 inches in diameter, which made 12 revolutions a minute; the garment being pressed against it by an apron moving in the same direction therewith, the top of the roller, however, being exposed for the purpose of feeding. While Edith, in the performance of her duties, was feeding the machine her right hand became entangled in a garment, was drawn between the apron and the roller, and burned. The charges of negligence relied upon were insufficient guards and failure to warn or instruct, both of which were submitted, but only a general verdict rendered. Defendant insists that neither was established. If, therefore, there was reversible error in the submission of either, or the verdict on either is not justified, at least a new trial must be granted. Le Mere v. Railway Transfer Co. 125 Minn. 159, 161, 145 N. W. 1068.

1. First, then, as to the alleged failure to guard: The machine was exhibited in court, and several witnesses gave expert testimony to the practicability of better guarding it. Defendant's claims of error in this regard are: The witnesses so testifying were not qualified. And even if they were, the proofs do not justify a finding for

plaintiff on this issue; negligence, however, being otherwise conceded. Neither is sustainable. The competency of plaintiff's expert witnesses was addressed to the sound discretion of the trial judge. McDonough v. Cameron, 116 Minn. 480, 483, 134 N. W. 118. While none of them were familiar with the particular mangle involved, all were either experienced in mechanics or sufficiently conversant with mangles generally to qualify them. With their testimony in, the proofs are sufficient to sustain a finding on the issue, notwithstanding defendant's evidence to the contrary.

2. On the issue of failure to instruct it appeared that Edith had, for upward of nine months before beginning to tend the mangle, been engaged within a few feet thereof, had often seen it in operation, and knew how the work was done. For about a month prior to her injury she worked on the taking-off side of the machine, removing the pressed garments. In doing this she stood on the opposite side from the operator who placed the garments on the roller, and could see and understand the method of handling them. For half an hour, or less, each day during this month, she operated the machine alone, in the absence of the regular feeder, at which times she would have to go to the feeding side to put the garments on the roller, and it was while feeding that she was injured. Except as stated, she was inexperienced. The first time she fed the machine she observed its small rollers on the other side which revolved the apron, and knew that the large roller was steam-heated hotter than an ordinary smoothing iron, and would burn her hand if drawn against it. She also knew the revolving apron pressed the garments against the heated roller sufficiently to pull them around it and take out the wrinkles, and when the apron came into contact with them they were pulled away from her hands, at which time it was necessary to hold them back and straighten them out so as to prevent wrinkling before they passed between the apron and the hot roller. She had also read a notice near the machine stating: "Operators are warned against carelessness. All straightening must be done by the operator feeding the machine." She testified she thought this meant the feeder should be careful not to put her hand on the

roller because it would be burned.    Concededly no other instructions or warnings were given.

Defendant, while admitting the general duty of a master to warn, insists that Edith's experience with and knowledge of the machine, its work and dangers were such, and the latter so obvious, that in the exercise of ordinary care and observation she must be deemed to have both known and appreciated them, and hence no instructions or warnings were necessary, under the rule of Truntle v. North Star Woolen-Mill Co. 57 Minn. 52, 58 N. W. 832, where it is said at page 58:

"No duty rests upon a master to notify even a minor of the ordinary risks and dangers of his occupation which the latter actually knows and appreciates, or which are so open and apparent that one of his age and capacity would, under like circumstances, by the exercise of ordinary care, know and appreciate."

. And Blom v. Yellowstone Park Assn. 86 Minn. 237, 90 N. W. 397, and Jensen v. Regan, 92 Minn. 323, 99 N. W. 1126, are cited as conclusive, by analogy of facts, of the correctness of this position.

But Edith testified further that the apron and heated roller seemed to her to be so separated as to involve no danger of her hand being caught; that she thought they came tight together only on the under side of the roller; and that, while she had heard of mangle hand guards, she had never seen one and did not know where they were put on or how they worked.    "The master's duty is not merely to advise the servant of existing conditions, but to see to it that he comprehends the risk and understands the danger."    Gillespie v. Great Northern Ry. Co. 124 Minn. 1, 6, 144 N. W. 466.    Giving due weight to the girl's age, sex, intelligence and experience, it cannot be held as a matter of law to appear conclusively that she knew or must be deemed to have known that her hand was liable to be drawn into the comparatively wide-appearing pocket made by the apron and the hot roller and injured, because she saw garments pass on the roller, or that she knew or should have known and appreciated the risks and dangers of the service so as to absolve defendant from its duty to warn and instruct.    The case is distinguishable from the Blom and Jensen cases.    In the former plaintiff was a

woman 28 years old, had been working at the machine two weeks when injured, but for five weeks previously had operated a similar mangle, except that the latter was provided with a hand guard while the former was not, and the rollers between which her hand was drawn were immediately in front of her so that she could plainly see their operation; wherefore it was held that she assumed the risk, particular stress being laid upon the fact that she was familiar with the use and necessity of a guard. In the Jensen case plaintiff was 19 years old, had operated a mangle of a different type for 11 months before going to work on the one causing her injury, which occurred while she was attempting to extract from the machine, without stopping it, a tablecloth which had become entangled therein, though she could, by using an appliance with which she was thoroughly familiar, have stopped the machine and performed the operation in a perfectly safe manner. "We are clearly of the opinion," said the court, "that respondent had been instructed in the use of the mangle, was thoroughly familiar with it, knew the movements of the rollers and how to start and stop the machine, thoroughly comprehended the danger of permitting her hand to come in contact with the steam-heated roller, had knowledge of the fact that this machine was not equipped with strings to prevent material from wrapping about the rollers, and must have appreciated the danger of attempting to remove the tablecloth without stopping the machine." In neither case was the mangle similar to the one here involved.

3. What has been said disposes also of the claim of assumption of risk being a bar to recovery, adversely to defendant's contention. In 1 Street's Foundations, 166, it is said that before this defense can be invoked it must appear "that the plaintiff knew and appreciated the full extent of the danger to which he was subjected;" which is in accord with the holdings of this court. 2 Dunnell, Minn. Dig. § 5970.

The question of Edith's contributory negligence was likewise for the jury. It is true that within easy access of her left hand there was a crank arm with which, to her knowledge, she could have stopped the machine, or at least slowed it down before her hand was

. drawn between the apron and the hot roller; but, in the emergency of the moment she cannot be conclusively charged with contributory negligence because she failed to use the appliance.

4. In the course of argument upon an application by plaintiff for an adjournment in order to enable him to procure expert witnesses upon the practicability of a hand guard on the machine, his counsel stated that until a week before the trial he had been denied the privilege of examining it, and thereafter requested permission for inspection by a mechanic. To this defendant's counsel objected.

· "I don't believe that is a proper statement. There is no way of controverting any such statement as that."

The court: "I hardly think that is proper in the presence of the jury."

To this plaintiff's counsel replied that there was a way "of controverting it if it is not true;" which was denied by defendant's counsel. Whereupon the former, on being told by the court to state what he wanted, repeated his request for adjournment and reiterated his statement that the privilege of having the machine examined by experts had been denied; and, upon objection again being made to his remarks, stated:

"Well, if it is untrue, it is prejudicial, if it is true, it is not prejudicial," and on further objection:

"I might say as an officer of this court, that the privilege of having this machine examined has not been accorded to us. If that is prejudicial error I am willing to be criticised and to take the consequence."

This was also objected to, and the court ended the matter with:

"Well, I will instruct the jury that that is not evidence in this case at all, and not to take any stock in it. Just dismiss it from your minds and try this case on the evidence in court."

Defendant assigns this incident of the trial as error. It seems, however, that the remarks complained of were addressed directly to the court, and intended primarily to convince it of the justice of plaintiff's request for an adjournment. At least nothing to the contrary appears. The matter was not specifically adverted to in the charge; but after the succinct and positive direction at the time,

such would hardly seem necessary, especially as full and ample opportunity was thereafter afforded for the examination demanded, and several experts did in fact make an inspection and testify. Moreover, no request to charge was made in this connection, and the trial court has declined to hold the matter ground for a new trial. We are not persuaded that it abused its discretion either in this or upon the point made by defendant's seventh assignment. See 2 Dunnell, Minn. Dig. § 7102.

5. No reversible error appears either in the instructions given or in the refusal of those demanded.

6. The verdict was for $12,000, which defendant claims is so excessive as to indicate it was given under the influence of passion or prejudice. As a result of the accident the girl's right hand and forearm were burned so severely that skin grafting was resorted to before the wounds healed, the skin being taken from her leg; and she also suffered loss of the ends of her fingers by amputation. The condition in which the hand and arm were finally left is that their anterior surface is practically nothing more than a scar, the tendons are contracted, and the fingers drawn. In short, the hand and forearm are practically useless and are likewise frightfully disfigured. We cannot disturb the verdict.

Order affirmed.