HENRY OLTHOFF v. GREAT NORTHERN RAILWAY
COMPANY.[1]

December 8, 1916.

Nos. 20,061—(201).

**Railway — question of negligence in stopping train — evidence sustains verdict.**

1. There is evidence in the record sufficient to sustain the verdict.

**Opinion evidence — distance required to stop train — whether witness is an expert.**

2. There was no abuse of discretion by the trial court in permitting two certain witnesses to testify, over an objection that no foundation had been laid, as to the distance within which a train could be stopped. The question whether a witness is competent to testify as an expert is primarily for the trial court and is largely within its discretion.

**Trial — instruction held not erroneous.**

3. A certain instruction to the jury did not inject a new issue into the case and was not erroneous.

Action in the district court for Stevens county to recover $50,000 for injury received by plaintiff while in the employ of defendant as a section hand. The answer alleged that plaintiff was injured while endeavoring to remove a hand-car from defendant's track and the risk and danger were incident to the work which was assumed by plaintiff as a part of his employment. The case was tried before Flaherty, J., who at the close of the testimony denied defendant's motion for a directed verdict and a jury which returned a verdict for $4,100. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*James B. Ormond,* for respondent.

SCHALLER, J.

On July 2, 1915, the plaintiff, who had been in the service of defendant

[1] Reported in 160 N. W. 206.

as sectionman for about eight months, was engaged in his work as such. His duties consisted in inspecting and working on the track, cutting weeds from the right of way, adjusting and tightening bolts, tamping ties, replacing old ties with new ones, spiking down rails, lining the track, fixing switches and work of a similar nature.

His employer furnished hand-cars which conveyed the sectionmen to and from their work and transported the materials and implements necessary thereto. The hand-car in use on that day was of the usual type, with black wheels, a brownish red floor or platform about two feet from the top of the rail and handles for operating it placed at a height of three or four feet above the platform.

Defendant's railroad track is straight and level for about one mile east and one mile west of Donnelly station in Stevens county, Minnesota. The view along the track is unobstructed by buildings, weeds, trees or shrubs, so that a person standing on the track one mile west of Donnelly could, on a clear day, see and distinguish persons or objects on the track at a distance of two miles to the east.

On the second of July, which was a bright, clear, unclouded day, at about 11 o'clock in the morning, plaintiff and another section hand, named Leir, had taken the hand-car to a point some 2,500 feet east of Donnelly, where they left it on the main track while they were working in the immediate vicinity. As they were about to start back with the hand-car, their attention was called to a man in an automobile in the public road, which at that point was very close to the right of way. The automobile seemed to be stalled in the mud. The driver called to plaintiff and Leir who went towards the automobile which was about 100 feet distant from the hand-car. Before they started to help the motorist they looked up and down the track to see if any train was in sight; but they neither saw nor heard one. They went to the stalled automobile and assisted the driver in getting it out of the rut. They had been there about five minutes when they discovered a train approaching from the west. They immediately ran towards the hand-car to take it off the track, as was their duty, before the train arrived, there being, as they knew, danger to both life and property if a collision occurred. When about 50 feet from the hand-car they saw the train passing the section house, which is east of the depot and a little over 2,000 feet from the point where the hand-

car was standing. About that time the whistle on the locomotive was blowing short, sharp, blasts as a danger signal. Reaching the hand-car, Leir grasped the west end thereof and swung it off the north rail. Plaintiff attempted to lift the east end of the hand-car over the rail. Leir started to help him, but looking up, saw that the train was almost upon them. He jumped to the north and into the ditch, escaping injury. Plaintiff also attempted to leap out of danger and had cleared the north rail when the engine struck the hand-car and demolished it. Parts of the car struck the plaintiff, throwing him into the northerly ditch and seriously injured him. The train was brought to a stand, the engine stopping at a point about 600 feet beyond the place where plaintiff was injured.

The action was brought under the provisions of the Federal Employer's Liability Act, and was tried to a jury which returned a verdict for the plaintiff. Defendant made a blended motion for judgment notwithstanding the verdict or for a new trial. The motion was denied. Defendant appeals.

Appellant argues that there is not sufficient evidence to support the verdict; that the court erred in admitting the testimony of the plaintiff and Leir as to the distance in which the train could have been brought to a full stop; and that a certain instruction given by the court to the jury was erroneous.

1. Whether or not the defendant was guilty of negligence in failing to reduce the speed of the train when the hand-car was first seen, and whether or not the engineer saw the hand-car and this plaintiff in time to stop or bring the train under full control, are questions on which the evidence was conflicting. The jury could have found the facts as claimed by the defendant, and a verdict in its favor would not be disturbed. There was evidence in the case sufficient to sustain a verdict for the plaintiff, if the facts were found to be as claimed by him.

There was evidence tending to show that the engineer of the train saw this hand-car when he was more than half a mile away from it; that he knew that sectionmen must be working in the immediate vicinity of the hand-car; that he blew warning signals to notify them to take the obstruction from the track; that he saw them running towards the hand-car and attempting to remove it, and that he could have stopped the

train within a distance of 1,200 or 1,300 feet from the section house, which would be a point between 600 and 700 feet west of the hand-car. There was testimony based on the speed recorder attached to the locomotive, from which the jury might have found that this train on this occasion was actually stopped in a distance of about 1,300 feet. The jury were not necessarily bound by the testimony given by defendant's engineers and expert witnesses.

2. It is urged that no sufficient foundation was laid for the reception of testimony by plaintiff and Leir that this train could have been stopped in a distance of 1,000 to 1,200 feet. It is true that neither of these men was a railroad engineer or even a trainman. One of them (Leir) had been an employee of the defendant for a number of years. He had worked on the section; had traveled on this very train; had seen it flagged down at this very station, and had traveled thousands of miles all over the United States on railroad trains and observed the distance within which trains could be stopped. He testified that in his opinion this train, going at the rate of between 35 and 40 miles per hour, could have been stopped in a distance of between 1,000 and 1,200 feet. Plaintiff had not had so varied an experience. He had traveled on railroad trains across the continent, and back to this state; had worked as a section man in Germany and in Minnesota; had seen this very train flagged and stopped at Donnelly; had observed trains with reference to the distance within which they could be stopped, and testified that in his judgment this train could have been stopped in a distance of 1,200 feet.

The trial court is primarily the judge as to whether or not a sufficient foundation has been laid for the admission of evidence of this kind. It is a matter largely within its discretion. Graseth v. Northwestern Knitting Co. 128 Minn. 245, 150 N. W. 804; Palon v. Great Northern Ry. Co. 129 Minn. 101, 151 N. W. 894. While it may not seem to be of great value, the weight of such evidence is for the jury. The evidence furnished by the speed recorded in some respects corroborates the testimony of these witnesses. The speed recorder, which shows that the train was traveling at about 45 miles per hour, also shows this very stop. The evidence furnished by this device, when considered in connection with the testimony of the witness Winney, would justify the jury in finding that this stop was made within 1,300 feet.

3. The court charged the jury that:

"If after the engineer saw the hand-car in question on the track he knew and believed that the sounding and blowing of the danger whistle by him was liable to, and probably would, call the plaintiff or other men to the hand-car for the purpose of removing it from the track, the engineer would be charged with substantially the same line of conduct, that is, it would be his duty to exercise reasonable care to avoid injury to such person or persons as the sounding of the danger whistle, in his judgment, might call to the car for the purpose of removing it from the track."

This is assigned as error.

We cannot agree with defendant that this instruction introduced a new and separate ground of negligence into the case. True, the complaint does not charge that the sounding of the whistle was negligence. But it is clear that the engineer sounded the whistle for the purpose of having the hand-car removed from the track. He, therefore, knew and believed that "the sounding and blowing of the danger whistle by him was liable to, and probably would, call the plaintiff or other men to the hand-car for the purpose of removing it from the track," and it would be his duty to exercise reasonable care to avoid injury to such persons.

Order affirmed.