ETHEL LAKIN, RESPONDENT, v. CHICAGO, ROCK-ISLAND AND PACIFIC RY. CO. ET AL., APPELLANT.—78 S. W. (2d) 481.

Kansas City Court of Appeals.   December 3, 1934.

462

*S. L. Trusty, Trusty & Pugh* and *Guy W. Green, Jr.,* for respondent.

*Luther Burns, Henry S. Conrad, L. E. Durham, Hale Houts* and *I. M. Lee* for appellants.

SHAIN, P. J.—In this case the plaintiff seeks to recover for the death of her minor son, who was killed at a street crossing in Kansas City, Missouri, by a train owned and operated by the defendant railway company. Recovery is also asked as against defendant, William Bulger who was the watchman at said street crossing.

Trial was by jury. The case was submitted on the humanitarian rule alone. Verdict of the jury was for the plaintiff and against both defendants in the sum of $6750. Judgment was entered in accordance with verdict and both defendants appealed.

Necessary to an understanding of the issues, a brief statement of the facts are given wherein, in accordance with rules governing review, the statement is principally based upon the most favorable evidence to plaintiff.

The facts pertinent to the issues are that the appellant railway operates its line of railroad through Jackson County, Missouri, and across the public highways and streets in Kansas City, Missouri. Independence Road in Kansas City, Missouri, is a much used thoroughfare and is crossed by the railroad of the defendant railway company in the vicinity of the American Steel Mills district. At this crossing, the death complained of occurred.

It appears that the place of accident was in the corporate limits of Kansas City, Missouri. It is plead and it appears in evidence that an ordinance of Kansas City, Missouri, requires that a watchman shall be stationed at such a crossing, as is involved herein, whose duty it is to warn persons of danger from approaching trains. The defendant, Bulger, was the watchman stationed at such crossing.

It appears that the Frisco railroad track also crosses Independence Road at the same locality as does the Rock Island. The Frisco track takes a due north course across the street, while the defendant company's road starts to curve before entering the street and veers to the west of north. Between the Frisco track and the defendant company's track and on the south side of the street is situate the watchman's shack.

At the time in question, the train was coming from the south of the street crossing and was headed northward. Plaintiff's son was proceeding on the north side of Independence Road and was headed west. The boy, according to plaintiff's evidence, approached the track with his left knee in the bed of a small wagon which he was guiding with his left hand and pushing forward with his right foot. The evidence is to the effect that the boy was struck just as he came upon the east rail of the track.

Paul Lakin, a younger brother of the deceased boy, testified concerning the accident, as follows:

"Q. I want you to turn around and tell these gentlemen, without me asking a lot of questions, just what you saw your brother do. A. Well, he was going down the street with his left knee in the wagon, and pushing with his right foot, and when the train was going by we hollered "Look out, Frank!" and he turned around and the train hit the front end of the wagon, and knocked him out of the wagon in between the track, and he started to get up and the train hit him and knocked him unconscious."

The evidence is very indefinite as to what distance from the south that one could see a person at any stated distance east of the point where the boy was struck. The switchman's shanty standing between the diverging tracks and on the south side of Independence Road obstructs the vision from the south and the exact position of this small building, in relation to the diverging line of the Rock Island, is not given.

The measurement of Independence Road between south and north curb is given as thirty-six feet, from the south curb to the sidewalk is given as eleven feet and the sidewalk is five feet, making the point where the boy was struck approximately forty-two feet north of the shanty. It is evident that one on the right side of the engine could, at the distance of forty-two feet, have a clear vision of all the space on the north curb between the two tracks. This distance is indicated as fifty-five feet five inches on a plat shown in the record. It is, therefore, evident that from twenty feet east of the track on to the track the vision from the engine at varying distances south of the forty-two foot limit would increase as one approached the track from the twenty foot point. We use the twenty foot point, for the reason that the engineer on the train testified that he first saw the boy when he was from fifteen to twenty feet east of the track.

It appears that coming from the south the Frisco and the defendant railway use the same track, until they reach a switch south of Independence Road where the defendant company's track begins to make the turn west of north. There is evidence to the effect that from a point on the north side of Independence Road eighteen feet east of the east rail of the defendant company's track there was a clear vision south along the track to the switch-stand and that it was

approximately two hundred and forty feet from the switch-stand to the south edge of the pavement on Independence Road. The width of the Independence roadway being thirty-six feet gives a possible vision of two hundred and seventy-six feet, according to this evidence.

There is evidence that placed the boy within six feet of the rail at the time the engine was down at the switch. Mr. Marvin, the engineer on the train, on cross-examination testified, as follows:

"Q. I am just asking you. So you say now that you applied your brakes before you got to him? A. Yes, some.

"Q. How far away? A. Well, I don't know just exactly.

"Q. Give your best idea; the jury wasn't there. A. Well, he was within twenty feet of the track when I first saw him, and he was walking slowly and my idea was he intended to turn down, and when I realized it, or thought I did that the boy didn't realize the train, or whatever might have happened, and that he continued on, I set the brake.

"Q. How close was he when you set the brake? A. I expect he was within probably six or seven feet, somewhere along there, I don't know the exact distance, probably ten feet.

"Q. Probably ten feet away when you set the brake? A. I don't know just how far.

"Q. All right, if he was ten feet away when you set the brake how far away were you from the point of contact? A. If he was ten feet away when I set the brake—

"Q. I say, if you have the right idea that he was ten feet away when you set the brakes, how far were you away from the collision when you set the brakes? A. I was approximately that same distance.

"Q. Then you were moving at the same speed? A. Approximately, yes, sir."

There is substantial evidence to the effect that all proper signals and warning for the crossing were given by the train crew. However, there is evidence on the part of the plaintiff which, we conclude, raises an issue of fact.

There is much credible testimony to the effect that the boy proceeded upon the track with his head down and apparently oblivious to the danger. There is much credible testimony to the effect that, by reason of manufacturing plants and operation of switch engine, the locality of the accident was a very noisy district.

There was evidence offered as to the duties of the defendant watchman. The city ordinance plead provides that the watchman's duty is to "warn persons about to cross the railroad tracks at any such crossings of the approach of any railroad train, locomotive, tender or car."

Section 615 of the city ordinances was in evidence and reads as follows:

"Sec. 615. Moving Cars Over Crossings Where Watchman Required. No conductor, engineer, fireman, brakeman or other person shall move or cause or allow to be moved, any such locomotive, tender or car, over or upon any street or avenue, at the crossing of which, under the provisions hereof, a watchman is required to be stationed, without there is stationed and present a watchman at such crossing.''

The city ordinance plead provides it to be a misdemeanor for the watchman to fail to warn. The evidence discloses that on the approach of the train the watchman took his position near the middle of the street a few feet from the track and held up a sign with the word "Stop" plainly shown on both sides. As to other acts of the watchman, the evidence is disputed and therefore need not be set out for the purposes of this review. The plaintiff presented evidence to the effect that the train could have been stopped in the distance of twenty-five feet. The defendants' evidence placed the distance at approximately one hundred and seventy-five feet.

The evidence clearly shows that the boy was struck by the engine and that death resulted from the injuries inflicted.

## OPINION.

As before stated, judgment was for the plaintiff and against both defendants and the defendants appealed. We have above referred to the parties as plaintiff and defendants, as designated in the lower court, and will continue in such course.

The defendants for their first assignment of error present that it was error to submit the case to the jury.

We will first take up the assignment as to defendant Bulger, the watchman. The record discloses that the plaintiff presented the theory that the watchman's duties were such that a similar duty to that of the engineer devolved upon him and that a liability attached to him by reason of the fact that he did not put forth effort to stop the train. As to this matter, the evidence is clearly to the effect that his duty was to warn traffic and there is no evidence that supports the contention that he had any control over trains crossing the road.

As before stated, this case was submitted on the humanitarian doctrine alone. Under this doctrine the duty of the defendant railway company was to use all appliances to stop the train that could be used with safety when it, acting through its agents operating the train, either saw or could have seen by due care the peril of the boy. Certainly no such duty devolved upon the crossing watchman.

Based upon the watchman's duty, the railroad's liability would be on the failure or negligence of its agent, the watchman, in failing to give proper warning of the approach of the train. In such a case, the issue would depend upon the issue of fact as to the alleged negligence of the watchman concerning the giving of warning of the

approach of the train. Further, especially where as in this case the evidence is undisputed to the effect that the watchman was present and in the street holding up a stop signal and the boy was of age of accountability there is presented a different issue than the one declared upon and tried in the case at bar.

We conclude that for the defendant railroad company to be held to the last chance doctrine for the negligent act of the watchman, if it could be so held, the plaintiff would have to plead negligence of the watchman not only as to warning but also as to negligence of the watchman in failing to perform an alleged duty of taking the boy out of imminent peril after he saw or, by exercise of due care, could have see the perilous position. The question is not before us in the pleadings of this case and we are not called upon to decide as to whether a case could be stated making the defendant company liable under the humanitarian rule based upon the negligence of a watchman to warn. We do, however, conclude that no such case is presented in the pleadings herein. It follows that as no such case is plead as to the principal no such case is presented as to the agent.

We conclude, as above, on the further ground that, while the negligence of the train crew is imputed to the defendant company, acts of negligence of the train crew cannot be imputed to the watchman. Neither, under the case as presented herein, could the negligence of the watchman be imputed to the railroad's agents in charge of the train.

Further, holding as we do that plaintiff's allegations of negligence as to the watchman not using ordinary care in the use of means at hand to stop the train fails for the reason that he was not in control of said means. We further note that plaintiff's allegations of negligence of the watchman as to reasonable warning does not even charge, directly or by inference, that the watchman after he saw or could have seen the deceased in imminent peril could have rescued him.

For the above reasons, we conclude that it was reversible error, as to defendant Bulger, to refuse the peremptory instruction as to him. In harmony with above, we further conclude that the giving of instruction two was also error as to this defendant.

As to the assignment of error of submitting the case to the jury, as to the defendant railroad company, we have carefully studied the evidence.

The defendants urge that the testimony of plaintiff as to it being possible to stop the train in twenty-five feet is too unreasonable to be given credence. However, there is evidence from which it may be inferred that from a position over two hundred feet south of the north side of Independence Road objects from eighteen feet east of the track up to the track were visible from the position of the engineer. There is evidence therefore from which a jury might infer that the train might have been stopped with safety after the time

the boy was within six feet of the track and proceeding toward the track with his head down and apparently oblivious. Under such evidence, we conclude that a submission of the case as against the defendant company under the humanitarian rule was not error. [Homan v. Mo. Pac. R. Co., 64 S. W. (2d) l. c. (12) 624.]

We conclude that the facts of this case are distinguished from the facts in Shepherd v. Chicago, R. I. & P. Ry. Co., 72 S. W. (2d) 985, 987, in that the evidence of the plaintiff in that case was to the effect that he knew of the tracks; that he was expecting a train at any time and that he constantly looked to the westward for an approaching train. Under such a state of facts as above, the plaintiff of course was not in peril until he was too close to the tracks to stop. Again, there was nothing in the evidence in the Shepherd case from which it could be inferred that the engineer should have known of the peril in time to stop.

The plaintiff presents a long line of cases of similar import to the Shepherd case. We conclude that the reasons above assigned for our conclusion are sufficient without taking up and discussing the many cases cited on the point.

The defendants charge error in the giving of plaintiff's instruction one. Said instruction is a declaration of law submitting, as to the defendant company, on the humanitarian doctrine. As to the sufficiency of evidence to submit under the doctrine, we have ruled above.

The defendants present that it was error for the instruction to authorize a verdict as to negligence of the engineer before the deceased was in imminent peril. Defendants cite Bollinger v. St. Louis-San Francisco Ry. Co., 67 S. W. (2d) 985.

The case cited was tried under the Kansas rule, which differs from the Missouri rule, in that the duty to stop involves the question of the ability of plaintiff to extricate himself from the perilous position.

The Shepherd case, supra, is also cited. This case we have already distinguished.

The language in the instruction, in respect to the negligence of the engineer, is as follows:

"If you find from the evidence that Frank Lakin, deceased, *was coming into a position of imminent peril* of being injured by said engine of said train, and if you further find from the evidence that said engineer, by the exercise of reasonable and ordinary care, could have seen or known that said Frank Lakin *was so coming into* such imminent peril, etc." (Italics ours.)

The plaintiff in support of instruction one, which is complained of, cites Larey v. Missouri-Kansas-Texas R. Co., 64 S. W. (2d) 681, wherein the Supreme Court affirmed the judgment and wherein the principal instruction for plaintiff, in some respects, presented some of the defects complained of in the case at bar. It will be noted

that the instruction in the Larey case required, the jury to find obliviousness. The instruction in the Larey case is faulty in respect that, when taken alone, it permitted recovery on the theory that liability attached when the plaintiff was seen or by due care could have been seen approaching the track or point of danger. The court sustained the judgment in the above case because the instructions, when taken as a whole, cured the defect.

*Apropos* to thoughts which may be *dicta*, the learned judge, who wrote the opinion in the above case, was compelled to include in the opinion the substance of seven other instructions to the end that the conclusion reached might be understood.

Be it far from our thought to embrace in this opinion a thesis on practice of the law. However, by way of parenthesis, may we not here mildly admonish that a little care in the preparing of principal instructions so as not to leave out essential elements might shorten judicial opinions and be of help to both bench and bar.

Reverting to plaintiff's instruction one, the language used, "coming into a position of imminent peril," without any qualifications as to obliviousness, we conclude gives an entirely too roving commission to the triers of fact.

The Missouri humanitarian rule is one of the most liberal of any of the states of the Union. Our rule, one of our most imminent jurists said, in substance, that one could commit any act short of suicide and still there be a recovery thereunder. In reference to our doctrine, we conclude that further expansion of our rule is fraught with danger.

With obliviousness omitted, it is a question as to whether or not other instructions could cure the defect in plaintiff's instruction one. As it is presented in the record herein there are no instructions that take away the roving commission and no instructions that presents any element of oblivion, we therefore conclude that the very reasoning presented in the opinion in the Larey case, supra, supports our conclusion that plaintiff's instruction one presents fatal error.

There are other assignments of error. The further assignment directed to the case as against defendant Bulger need not be commented upon.

The defendants offered nineteen instructions which were refused by the court. Complaint is made as to the refusal of nine instructions. Eight of these instructions were withdrawal instructions and we conclude that the trial court did not violate sound discretion in refusing same. The other instruction we conclude would be superfluous, all the instructions being considered.

Defendants complain as to expert testimony of plaintiff's witness Yowell as to distance in which the train could be stopped. The matter of his qualifications was before the trial court. His experience

was gone into before the jury and we conclude that his evidence was admissible for what it was worth.

The defendants make complaint as to the instruction on measure of damages. Defendants present that the instruction permits assessment of penalty as distinguished from damages. The word damages nowhere appears in the instruction. The instruction in our opinion comes within the distinguishment made by Judge WHITE in Ward v. Mo. Pac. Ry. Co., 311 Mo. 92, 110, wherein the opinion in that case distinguished as to the opinion in Treadway v. United Railways Company, 300 Mo. 156. However, as this case will have to be remanded, we admonish a careful reading of the above two cases for the reason that our conclusion as to there being no reversible error is principally based upon the fact that the defendants offered no instruction on the measure of damages. If the defendants desired any qualifications they should have asked for same. [See Ward v. Mo. Pac. Ry. Co., supra.]

For the reasons assigned herein, judgment is reversed as to the defendant, Bulger, and reversed and remanded as to the defendant, the Chicago, Rock Island & Pacific Railway. All concur, *Bland, J.,* in the result and is of the opinion that the cause should be remanded as to the defendant, Bulger.

### ON MOTION FOR REHEARING.

SHAIN, P. J.—The plaintiff, respondent herein, in motion for rehearing urges that we are in error as being in conflict with the Supreme Court, in respect to our conclusions as to instruction number one (No. 1) given on behalf of plaintiff.

Our conclusion, as stated in the opinion, is that as appearing in the context, "Coming into a position of imminent peril, without any qualification as to obliviousness, we conclude gives an entirely too roving commission to the triers of facts."

The contention is made that there is error, in that the opinion is to the effect that obliviousness must be submitted in an instruction under the humanitarian doctrine, when such fact is alleged in the pleadings.

The language used in the opinion of this court states no such abstract principle.

If a defendant's answer admits that plaintiff was oblivious, failure to mention obliviousness in the instruction is not error. [Milward v. Wabash Ry. Co., 232 S. W. 226.]

If other instructions cure such defect, then omission in principal instruction is not reversible error. [Larey v. Railway Co., 64 S. W. (2d) 681.]

We conclude that the plaintiff has not distinguished, as between the case at bar and Crockett v. Railways Co., 243 S. W. 902. In the Crockett case, the word oblivious was contained in the instruction.

The point raised by the Railway Company in that case was as to the evidence showing obliviousness.

It will be noted that the opinion, in the above case, distinguishes as to Kamoss v. K. C. & W. B. Ry. Co., 202 S. W. 434, and Haines v. K. C. Rys. Co., 203 S. W. 631.

The issue in Bruns v. United Rys. Co., 251 S. W. 760, cited in the plaintiff's motion, involves issue of fact and not error in instruction.

The plaintiff cites Schmitter v. United Rys. Co., 254 S. W. 629. We find no such case anywhere in the volume cited.

The plaintiff cites Koontz v. Wabash Ry. Co., 253 S. W. 413. The instruction therein used the term oblivious and the question is as to evidence to support.

In Allen v. Purvis, 30 S. W. (2d) 196, cited by plaintiff, this court held that the omission of obliviousness in the principal instruction did not constitute error. In the above case no question of coming into a position of imminent peril was involved. In that case the plaintiff had stopped in the direct line of approach of the on-coming vehicle. In other words, was in a position of imminent peril. To the end that our opinion might be understood in that case as not being in conflict with the Kamoss and Bruns cases, supra, we included the instruction in full in the opinion.

By a study of the Allen case, supra, it will be clearly shown that there was no roving commission given to the jury.

In Woods v. Moffit, 38 S. W. (2d) 525, cited by the plaintiff, no question of instruction is involved. The case holds that, where obliviousness is admitted, no proof of same is required.

In the interpretation of court opinions, as well as other writings, the meaning must be gathered from the whole context.

As before stated, this court does not in its opinion in this case lay down the rule that, in all cases submitted on the humanitarian rule, the plaintiff's instructions must specifically use the term "oblivious."

There is language in the Allen case, supra, which, if followed, would justify the conclusion that the defendant, in its answer herein, admits obliviousness when the deceased did enter the danger zone. However, the instruction in the Allen case expressly requires the jury to find each and every fact constituting the basis of recovery from the evidence in the case.

In the Allen case, the question of obliviousness was not a contested issue from the fact that there was no evidence of any warning. In the case at bar the issue of warnings and signals is presented in the pleadings and in the evidence.

While the issue of warning is eliminated as an element fixing liability under the humanitarian rule, still the evidence of such may have bearing upon the issue of obliviousness as to the time when the deceased was coming into a position of imminent peril. In the

trial of this case, the engineer testified that as the boy was coming toward the tracks, and some twenty feet away, he was hauling his wagon. Others testified that he was pushing the wagon, one knee in the wagon and the other leg propelling, and that his head was down. The engineer testified to the effect that he did not realize that the boy was going upon the track, until it was too late to stop the train.

There is no issue of obliviousness as to the time the engineer knew, or by due care could have known, the boy was going on the track. However, we conclude there is an issue of obliviousness as to the time the boy was seen coming toward the track or was coming into a position of imminent peril.

The approaching to a railroad crossing by a person does not call for action, unless there is something in the approach that indicates obliviousness and that the person approaching is oblivious to the on-coming train.

The allegation of negligence, in the defendant's answer is, "Negligence and carelessness of the deceased in failing to look or listen for an approaching train, and in going upon the railroad track *immediately and directly in front of the moving train.*" (Italics ours.)

There is no admission whatever as to deceased approaching the track or "coming into a position of imminent peril." The testimony being contradictory, as to the approach of the deceased, we conclude presents an issue of fact as to his being oblivious.

If defendant's answer had alleged that deceased failed to look and listen as he was coming into a position of imminent peril, or as he was approaching the track, then such would have been an admission of obliviousness as to that question and then the rule as laid down in the Allen case, supra, would have applied.

In the Allen case it is said:

"Where it appears at the trial that a given fact is not treated as a real disputed question, the court may assume the existence of such fact and omit it from plaintiff's instruction. [Dickensheets v. Patrick, 217 Mo. App. 171, 274 S. W. 891, 893.]"

It is further urged that, as the word oblivious was presented in the plaintiff's instruction number two (No. 2), that the defect in instruction number one (No. 1) is cured. Instruction number two (No. 2) was presented as to the watchman and as said instruction was declared as error, for reasons given in the opinion, we cannot give same probative force to supply deficiency in instruction number one (No. 1).

Our conclusion, as to error in instruction number one (No. 1) in the case at bar, is not based upon the omission of the word "oblivious" alone, but is based upon our conclusion that to predicate recovery on the *mere coming into a position*, without any requirement

as to obliviousness and without any other instruction requiring any other finding of fact constituting the basis of recovery, from which obliviousness could be inferred, is a too roving commission.

Rehearing denied. All concur.