## CHICAGO GREAT WESTERN RY. CO. v. BEECHER.

### No. 13010.

Circuit Court of Appeals, Eighth Circuit.

July 23, 1945.

---

Harry S. Stearns, of Saint Paul, Minn. (Harry S. Stearns, Jr. and Michael N. Lyons, Jr., both of Saint Paul, Minn., and Donald Evans, of Des Moines, Iowa, on the brief), for appellant.

William H. DeParcq, of Minneapolis, Minn. (Robt. J. McDonald and Donald T. Barbeau, both of Minneapolis, Minn., on the brief), for appellee.

Before SANBORN, WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

On November 19, 1942, plaintiff (appellee), a child under three years of age, by his father and natural guardian com-

menced a common law action against the defendant in the state court of Minnesota to recover damages for personal injuries sustained at Dubuque, Iowa, as a result of the alleged negligence of defendant's employees while operating a freight train through that city on August 19, 1942. About the same time a similar action involving the same parties and the same cause of action was commenced in the state court of Illinois at Chicago. On December 9, 1942, the Minnesota case was removed by the defendant to the district court on the ground of diversity of citizenship. In December, 1942, after removal, the defendant appeared and filed answer.

On February 27, 1943, the district court of Iowa, sitting in Dubuque county, upon petition of defendant, issued a writ of injunction ex parte prohibiting plaintiff from maintaining the actions in Minnesota and Illinois, and further prohibiting plaintiff from prosecuting any other suit growing out of the same accident in any jurisdiction except Iowa.

On September 7, 1943, upon motion of plaintiff and after hearing thereon, the district court entered an order directing the plaintiff forthwith to dismiss without prejudice the action pending in Illinois, and directing the defendant within 10 days to dismiss the injunction proceedings and the writ of injunction granted by the court in Iowa. The order provided further that in the event the defendant failed to dismiss the injunction within 10 days the court, upon application of the plaintiff, would strike the answer and permit the plaintiff to proceed as by default.

The parties stipulated (1) that immediately upon the filing of the foregoing order the plaintiff dismissed his action pending at Chicago, Illinois; (2) that within 10 days defendant dismissed its injunction or restraining order at Dubuque, Iowa; and (3) that on October 14, 1943, by agreement of the parties the depositions of witnesses were taken at Dubuque, Iowa.

On November 10, 1943, the court denied defendant leave to file a petition seeking vacation of the order of September 7, 1943. On November 15, 1943, the defendant filed an amended answer and the case proceeded to trial before a jury. The trial resulted in a verdict for the plaintiff for damages. Judgment was entered thereon, and the defendant appeals.

The defendant seeks reversal of the judgment on the grounds that the court erred (1) in entering the order of September 7, 1943, supra; (2) in denying defendant's request at the opening of the trial to exclude the plaintiff from the court room during the trial; (3) in overruling defendant's objections to the admission of testimony; and (4) in the charge to the jury.

Since the sufficiency of the evidence to support the verdict and the judgment is not challenged only such facts as are necessary to an understanding of the legal contentions will be stated in connection with the discussion.

1. *The Order of September 7, 1943.—* The defendant contends that the order compelling it to dismiss its Iowa injunction within 10 days under penalty of having its answer stricken and the court's refusal to vacate the order and to dismiss the complaint is reversible error.

There is no claim that the case was not at issue or that the district court did not have jurisdiction of the subject matter of the cause of action and of the parties on January 27, 1943, when the injunction was issued restraining the plaintiff from prosecuting the case in the federal court in Minnesota. Neither is it denied that the issuance of the injunction was a valid exercise of the Iowa court's equity powers.

The defendant argues that the order directing it to dismiss the Iowa injunction was void, being in violation of the prohibition of § 265 of the Judicial Code, 28 U.S. C.A. § 379. To support this position defendant relies upon such cases as Southern R. Co. v. Painter, 314 U.S. 155, 62 S. Ct. 154, 86 L.Ed. 116, and Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967. The plaintiff contends that § 265 is not applicable because the order was issued by the federal court to protect its own jurisdiction, citing Chicago, M. & St. P. Ry. Co. v. Schendel, 8 Cir., 292 F. 326, and similar cases. In the view we have taken of the case it is unnecessary to consider these contentions.

Since the defendant did comply with the September 7th order by dismissing the Iowa injunction, and since the case was thereafter tried on its merits in the district court, this court should consider its own jurisdiction and the propriety of reversing or affirming the order.

It is an established rule in the federal courts that compliance with a judgment or decree of a court by payment of

the judgment or performance of the decree does not bar an appeal from such judgment or decree where repayment or restitution may be enforced. Dakota County v. Glidden, 113 U.S. 222, 224, 5 S.Ct. 428, 28 L.Ed. 981; Hoogendorn v. Daniel, 9 Cir., 202 F. 431; Josevig-Kennecott Copper Co. v. James F. Howarth Co., 9 Cir., 261 F. 567; Luedinghaus Lumber Co. v. Luedinghaus, 9 Cir., 299 F. 111; Cramer v. Phœnix Mutual Life Ins. Co., 8 Cir., 91 F.2d 141. And upon reversal of the judgment by an appellate court the trial court should compel restitution as far as possible where it is within its power to do so. Northwestern Fuel Co. v. Brock, 139 U.S. 216, 219, 11 S.Ct. 523, 35 L.Ed. 151; Arkadelphia Milling Co. v. St. Louis S. W. R. Co., 249 U. S. 134, 145, 39 S.Ct. 237, 63 L.Ed. 517; Ex parte Lincoln Gas & Electric Co., 256 U.S. 512, 516, 41 S.Ct. 558, 65 L.Ed. 1066; Baltimore & Ohio R. Co. v. United States, 279 U.S. 781, 786, 49 S.Ct. 492, 73 L.Ed. 954. But the acceptance of the benefits of a judgment constitutes an abandonment of the right to appeal. Colquette v. Crossett Lumber Co., 8 Cir., 149 F.2d 116, 118.

■■■ Another well established rule is that courts will decide only actual controversies, and that an appellate court, when an event has occurred which renders it impossible to grant any effectual relief to the appellant, will not proceed to judgment but will dismiss the appeal. Or, "if the intervening event is owing either to the plaintiff's [appellant's] own act, or to a power beyond the control of either party, the court will stay its hand." Mills v. Green, 159 U.S. 651, 653, 654, 16 S.Ct. 132, 133, 40 L.Ed. 293; Dakota County v. Glidden, supra. And when the controversy resulting in the order appealed from is extinguished ·by compliance the case is moot and the court will not proceed. American Book Co. v. Kansas, 193 U.S. 49, 24 S.Ct. 394, 48 L.Ed. 613. In such a case an appellate court is powerless to grant relief. People of State of California v. San Pablo & Tulare R. Co., 149 U.S. 308, 314, 13 S.Ct. 876, 37 L.Ed. 747. When an injunctive order has expired it is moot. Southard & Co. v. Salinger, 7 Cir., 117 F.2d 194; Walling v. Shenandoah-Dives Mining Co., 10 Cir., 134 F.2d 395; Benitez v. Anciani, 1 Cir., 127 F.2d 121, 125. When the affirmance or reversal of an order made in the course of the proceeding would make no difference in respect of the controversy on the merits, the appellate court will not determine whether it was decided erroneously or not. Little v. Bowers, 134 U.S. 547, 556, 10 S.Ct. 620, 33 L.Ed. 1016. Compare Singer Mfg. Co. v. Wright, 141 U.S. 696, 700, 12 S.Ct. 103, 35 L.Ed. 906; New Orleans Flour Inspectors v. Glover, 160 U.S. 170, 16 S.Ct. 321, 40 L.Ed. 382; Codlin v. Kohlhausen, 181 U.S. 151, 21 S.Ct. 584, 45 L.Ed. 793; Jones v. Montague, 194 U.S. 147, 151, 152, 24 S.Ct. 611, 48 L.Ed. 913; In re Lincoln, 202 U.S. 178, 26 S.Ct. 602, 50 L.Ed. 984; Fisher v. Baker, 203 U.S. 174, 27 S.Ct. 135, 51 L.Ed. 142, 7 Ann.Cas. 1018; United States v. Hamburg Amerikanische Packetfahrt-Actien Gesellschaft, 239 U.S. 466, 475, 36 S.Ct. 212, 60 L.Ed. 387; Missouri Public Service Co. v. City of Trenton, Mo., 8 Cir., 80 F.2d 520.

■■■ The foregoing rules render it impossible for this court to grant the defendant any form of relief from the order complained of. Defendant had a right to appeal to this court from the order when it was entered, § 129, Judicial Code, 28 U.S. C.A. § 227, and to ask for a stay order pending the appeal. Instead of pursuing this course it elected to comply with the order and dismissed the injunction proceeding in the Iowa court. No obstacle to the trial or restraint upon the plaintiff then remained. Thereafter defendant took depositions, filed an amended answer, and participated in the trial. The district court having jurisdiction of the subject matter and of the parties tried the case, as it was required to do. McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762. These events having occurred restitution is impossible. Neither this court nor the district court can reinstate the injunction proceeding in the Iowa court; and, if, upon application of the defendant, the Iowa court should do so its order can not be made retroactive so as to affect the trial already had and the judgment already entered in the district court.

In this connection it should be observed that the subject matter of the action in the district court was damages for the injury to the plaintiff. That was not the subject matter of the proceeding in the Iowa court. The orders relating to the injunction in no way impaired the jurisdiction of the federal court to try the case on its merits. The dismissal of the injunction terminated the proceeding in the Iowa court, and the controversy in regard to the plaintiff's maintenance of this action ended.· The order is, therefore, moot.

■ We should not, under the circumstances, reverse the judgment on the merits unless it appears that prejudicial error occurred upon the trial. We can not reverse and order a new trial in the absence of such error because we are bound to assume that the judgment of the federal court appealed from is a legally correct adjudication of the controversy.

Another contention urged by the defendant is that refusal to obey the order of the court would have been fraught with such a serious consequence that no court ever intended a defendant to pursue so hazardous a course. A similar argument was addressed to the Supreme Court in the American Book Co. case, supra [193 U.S. 49, 24 S.Ct. 396], and the Court observed, "It makes no difference that plaintiff in error 'felt coerced' into compliance. A judgment usually has a coercive effect, and necessarily presents to the party against whom it is rendered the consideration whether it is better to comply or to continue the litigation. After compliance there is nothing to litigate." That language is applicable here. The controversy in regard to the injunction was wholly unrelated to the issues on the merits; and compliance left nothing in respect of that controversy to litigate. Compare Little v. Bowers, supra, 134 U.S. at pages 553 ff, 10 S.Ct. at pages 553 ff, 33 L.Ed. 1016. The defendant seems to have acted on the theory that when the order was entered its only choice was between compliance and suffering a default judgment to be entered against it. But, as pointed out above, other remedies were available.

Considering all of these facts, we hold that under the authorities cited above the order of September 7, 1943, is moot on this appeal, and that we are without competence to determine its validity or to reverse it.

■ *2. The Request to Exclude Plaintiff from the Court Room.*—At the commencement of the trial counsel for the defendant requested the court to exclude the infant plaintiff from the court room during the trial. The request was denied, the court saying, "I know of no rule of law which authorizes the court to exclude plaintiff, defendant, or any litigant from the court room"; and no authority was cited to the court in support of the request. Neither is any authority cited in the brief in this court to support defendant's conten-

tion, and we have found none. We conclude that the contention is without merit.

*3. The Admission of Testimony.*—One of the issues submitted to the jury was whether the enginemen when approaching the place of the accident operated the train at an excessive speed under the circumstances and whether they used reasonable care after seeing the plaintiff child in a place of danger to stop the train and avoid the accident. The engineer and firemen testified that they saw the child sitting on the west rail of the track on which the train was moving when they were from 400 to 500 feet away, and that the train was then traveling at the rate of 20 to 25 miles an hour. To show that the train might then have been stopped in time to have avoided the accident the plaintiff introduced the testimony of three experts. The defendant objected to their testimony on the ground of insufficient foundation in that they were not shown to be qualified as experts to express an opinion as to the distance in which the train could be stopped. There was no objection to the form or content of the hypothetical question submitted.

The locomotive pulling the train was known as the "Texas" type. Oscar H. Goetschel, the first of plaintiff's experts, testified that he had been employed by the Baltimore & Ohio Railroad as a freight engineer for 20 years and had seen all types of locomotives operate. He had seen the "Texas" type of locomotive in operation and had been in the cab of a locomotive of this type and he had operated locomotives of an equivalent weight but of a different type. He had never made a stop test but had seen such tests made, though he did not remember just exactly what they were; that not all freight trains stop alike in an emergency. H. A. Foley had 41 years of experience as a locomotive engineer. He had never made stop tests but had seen them made. He had been in a "Texas" type locomotive, but he did not testify whether he had ever observed stop tests by this type. He had not used the Westinghouse air brakes and could not explain their technical operation. William J. Forsythe testified that he had been a locomotive engineer for 14 years. It was not shown that he was familiar with the "Texas" type locomotive. All three witnesses testified that they had had experience in operating and stopping trains under all kinds of circumstances, trains of various weights and lengths, on

curves and in emergencies, and that they were able to express an opinion as to the distance in which the train could be stopped under the circumstances described in the hypothetical question.*

■ The admissibility of evidence is governed by the rule applied in federal courts or in the courts of the state in which the court sits, whichever favors its reception. Rule 43(a) of the Rules of Civil Procedure, 28 U.S.C.A. following § 723c.

[12] In the federal courts the qualifications of an expert witness before he will be permitted to express an opinion are a matter within the reasonable discretion of the trial court and its ruling thereon will not be reversed unless that discretion was abused. Gila Valley, G. & N. R. Co. v. Lyon, 203 U.S. 465, 475, 27 S.Ct. 145, 51 L.Ed. 276; Chateaugay Ore & Iron Co. v. Blake, 144 U.S. 476, 484, 12 S.Ct. 731, 36 L.Ed. 510; Minnesota & Ontario Paper Co. v. Swenson Evaporator Co., 8 Cir., 281 F. 622, 627. The rule is the same in the courts of Minnesota. Blondel v. St. Paul City Ry. Co., 66 Minn. 284, 68 N.W. 1079, 1080; Sloniker v. Great Northern Ry. Co., 76 Minn. 306, 79 N.W. 168, 169; Graseth v. Northwestern Knitting Co., 128 Minn. 245, 150 N.W. 804, 805; Olthoff v. Great Northern R. Co., 135 Minn. 72, 160 N.W. 206, 208; Dumbeck v. Chicago G. W. R. Co., 177 Minn. 261, 225 N.W. 111, 113; Palmer v. Order of United Commercial Travelers, 191 Minn. 204, 253 N.W. 543, 544; Backstrom v. New York Life Ins. Co., 194 Minn. 67, 259 N.W. 681, 683; Moeller v. St. Paul City Ry. Co., 218 Minn. 353, 16 N.W.2d 289, 295, 296. The same rule obtains in other states. Wimsatt's Adm'x v. Louisville & N. R. Co., 235 Ky. 405, 31 S.W.2d 729, 735; Lakin v. Chicago, R. I. & P. R. Co., 229 Mo.App. 461, 78 S.W.2d 481, 485.

■ In the Palmer case, supra [191 Minn. 204, 253 N.W. 544], the Supreme Court of Minnesota said: " 'The test to determine whether a witness is qualified as an expert is to inquire whether his knowledge of the matter in relation to which his opinion is asked is such that it will probably aid the trier of the question to determine the truth.' * * * It is for the trial court to

determine whether a witness qualifies as an expert." In the Olthoff case, supra, the question was whether the trial court abused its discretion in permitting two expert witnesses to testify over an objection that no foundation had been laid, as to the distance within which a train could be stopped. They both testified that the train involved in that case going at the rate of 35 to 40 miles an hour could have been stopped within a distance of 1,000 to 1,200 feet. The Supreme Court of Minnesota held that there was no abuse of discretion in receiving the opinions, although neither of the witnesses was a railroad engineer or even a trainman. One of them was a section man and had ridden on trains and observed the distances within which trains could be stopped. The other man had even less experience with trains than the first. The Court said the admission of such evidence is largely within the discretion of the trial judge and that "the weight of such evidence is for the jury." Tested by the Minnesota rule it can not be said by this court that the trial court abused its discretion in admitting the testimony of plaintiff's experts.

■ 4. *The Charge to the Jury.*—The defendant requested the court to instruct the jury that at the time and place of the accident the plaintiff was in law a trespasser; or, in the alternative, that plaintiff was not a "licensee by express invitation", but that he was a "bare licensee", and that, as such, the defendant owed him no duty save that it should not knowingly let him run upon a hidden peril, or wantonly cause him harm.

The court refused these requested instructions and charged the jury that "Under the evidence in this case the [plaintiff] child was a licensee and not a trespasser * * * that it was the duty of the enginemen in charge of the train to use reasonable care by keeping a lookout ahead to discover persons in a position of danger on or near the tracks at and near the place of the accident * * * to stop the train to avoid striking a person if he saw, or by the exercise of ordinary care could have seen, such person in time to stop the train by the use of ordinary care to avoid an accident. Likewise it was the duty of the engineer to use ordinary care by running the train at

---

* They testified that under the circumstances here the train could have been stopped moving at a speed of 20 to 25 miles per hour within 320 to 355 feet, and at slower speeds within a shorter distance.

such speed as to have it under reasonable control."

The defendant contends that the court erred both in refusing the requested instructions and in the charge given.

On this point the case is controlled by the law of Iowa. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Chicago G. W. R. Co. v. Robinson, 8 Cir., 101 F.2d 994, 996.

The courts of Iowa have defined the terms trespasser and licensee as applied to persons going upon a railroad right of way and have stated definitely the duty of the railroad employees to such persons. The cases are collected and discussed by the Supreme Court of Iowa in Mann v. Des Moines R. Co., 232 Iowa 1049, 7 N.W.2d 45, cited by plaintiff.

 Speaking generally, a trespasser under Iowa law is one who is not rightfully upon the land of another, but enters it without the consent, either express or implied, of the owner. If after the employees in charge of a train become aware of danger to a trespasser on the track, they can, by the exercise of such care as a reasonably prudent person would exercise under the circumstances—that is, the highest degree of care in view of the fact that human life is involved—avert such danger, it is their duty to do so. A failure to exercise such care is negligence attributable to the railroad company. Gregory v. Wabash R. Co., 126 Iowa 230, 101 N.W. 761.

 Under Iowa law there are three classes of licensees: (1) A licensee by express invitation is one who is directly invited by the owner of land to enter upon it; and such a person is rightfully upon it. (2) A licensee by implied invitation is one who has been invited to enter upon land by the owner or occupier by some affirmative act done by the owner or occupant, or by appearances which justify persons generally in believing that such owner or occupant had given his consent to the public generally to enter upon or to cross over his premises, and while such licensee is acting within the scope and limit of such implied invitation he has the lawful right to be where he is so invited. When a licensee, by express or implied invitation, is upon a railroad track at a place within the scope of such invitation the employees of the railroad company are bound to expect his presence, to keep a lookout for him, and to exercise reasonable and ordinary care in the operation of trains to protect him from injury. Mann v. Des Moines Ry. Co., supra; Croft v. Chicago, R. I. & P. R. Co., 134 Iowa 411, 109 N.W. 723; Clampit v. Chicago, St. P. & K. C. Ry. Co., 84 Iowa 71, 50 N.W. 673. (3) A "bare licensee" is one who enters upon the land of another without objection, or by mere permission, sufferance, or acquiescence of the owner A bare licensee takes upon himself the risk of injury. The owner has no duty to look out for the safety of such a person, save that he should not knowingly let him run upon a hidden peril or wantonly cause him harm. Wendt v. Incorporated Town of Akron, 161 Iowa 338, 345, 142 N.W. 1024, 1027.

 We think the trial court did not err in refusing defendant's requested instruction nor in the instructions given. Under the undisputed facts plaintiff was not a trespasser, but, under Iowa law, he was a licensee by implied invitation to whom the defendant owed the duty of keeping a lookout and of exercising reasonable care in the light of the surrounding circumstances to keep its train under reasonable control and to stop it in time to avert the accident.

At the point where the accident occurred the defendant maintains two parallel tracks running in a general north and south direction. About 500 feet north of the place of the accident the tracks are crossed by 24th street and about an equal distance south by 22d street. 23d street does not run through the neighborhood across the tracks. The surrounding territory is a densely populated district. The houses on each side of the right of way face away from the tracks with back yards between the houses and the railroad. The plaintiff's residence is on the west side of the railroad facing west, midway between 22d and 24th streets. Two paths go through the yard of plaintiff's home and then branch into three paths, one of which turns north, one south, and the other goes straight on across the tracks. The paths were used constantly by both children and adults passing from the west side of the tracks to a church, a school and playgrounds on the east. One witness testified that so many people passed across them that "It was a main thoroughfare, just like a street." The paths had been so used for at least six years prior to the accident, and the evidence showed that defendant's employees operating trains over the tracks had

knowledge of the use of the paths by the public.

Under the circumstances, since the child when first seen by the engineer and fireman, while the approaching train was still 400 to 500 feet away, was on the track in a place of danger at the point where the path crosses the railroad back of plaintiff's home, he was a licensee by implied invitation under Iowa law. For cases applying Iowa law to licensed ways over and across railroad tracks and supporting the conclusion we have reached see Clampit v. Chicago, St. P. & K. C. Ry. Co., 84 Iowa 71, 50 N.W. 673; Thomas v. Chicago, M. & St. P. Ry. Co., 103 Iowa 649, 72 N.W. 783, 39 L.R.A. 399; Booth v. Union Terminal R. Co., 126 Iowa 8, 101 N.W. 147; Calwell v. Minneapolis & St. L. R. Co., 138 Iowa 32, 115 N.W. 605; Tarashonsky v. Illinois Cent. R. Co., 139 Iowa 709, 117 N.W. 1074, 1075; Mann v. Des Moines Ry. Co., supra, and cases cited; Chicago G. W. R. Co. v. Robinson, supra.

Since we find no error in the record, the judgment appealed from is affirmed.